VIDEO CORPORATION OF AMERICA, Formerly Known as TEL-ETRONICS INTERNATIONAL, INC., Appellant, v FREDER-ICK FLATTO ASSOCIATES, INC., Defendant and Third-Party Plaintiff-Respondent. AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, Third-Party Defendant.

First Department, March 30, 1982

APPEARANCES OF COUNSEL

*Andrew C. Jacobson* of counsel (*Weg Myers Jacobson & Scheer, P. C.,* attorneys), for appellant.

*Andrew R. Simmonds* of counsel (*Robert E. Meshel* with him on the brief; *D'Amato & Lynch,* attorneys), for respondent.

BIRNS, J. P.

Plaintiff has brought this action against defendant insurance broker alleging failure to procure full and adequate insurance coverage, in particular business interruption loss coverage. The complaint has been dismissed as barred by the Statute of Limitations, which determination is challenged on this appeal.

The amended complaint alleges two causes of action, the first for negligence and the second for breach of contract. For the purposes of this appeal, the key allegations are contained in paragraph 11, part of the first cause of action, and paragraphs 21 and 22, part of the second cause of action, of the amended complaint. Paragraph 11 alleges "defendant had represented, assured and acknowledged to plaintiff its understanding of plaintiff's insurance needs and agreed to procure, furnish and maintain at all times adequate insurance for plaintiff so as to fully indemnify the latter in the event of occurrences against which plaintiff sought to be protected." Paragraph 21, the opening paragraph of the contract claim, incorporates each and every allegation of the negligence claim, while paragraph 22 states "defendant contracted with plaintiff to secure, furnish and maintain * * * insurance coverage for plaintiff's business so as to indemnify plaintiff in the event of certain risks of loss including but not limited to loss due to business interruption."

Defendant moved to dismiss the complaint on the ground that the claims were barred by the Statute of Limitations. The operative dates insofar as this issue is concerned are these: On October 5, 1973, defendant procured for plaintiff an insurance policy issued by American Guarantee and Liability Insurance Co., which included $1,000,000 coverage for business interruption losses. On February 17, 1975, plaintiff's premises were vandalized. The insurer refused payment for reimbursement of plaintiff's alleged business interruption losses. Plaintiff commenced suit against the insurer on the contract of insurance. It was not until the insurer served an amended answer in that action on October 22, 1977, that it asserted the coinsurance clause contained in the business interruption provision as a partial,

affirmative defense. It appears that this partial, affirmative defense was sustained at the trial of plaintiff's action against the insurer in April, 1978. This action against the insurance broker was commenced on August 22, 1978.

Special Term granted the motion to dismiss. The court found "this agreement was not an undertaking to guarantee such a specific result as to have the action sound in contract." Instead, the action was found to be essentially one alleging misconduct or malpractice, as to which the three-year Statute of Limitations of CPLR 214 applied. It was further held that the cause of action accrued no later than February, 1975, the date that plaintiff suffered damage to its premises, and thus the action was barred by the Statute of Limitations.

Insofar as Special Term found the complaint "was not an undertaking to guarantee * * * a specific result", it committed error. Although the additional allegations of the contract cause of action, in particular paragraph 22, do not allege any such undertaking, the allegations of the negligence cause of action are incorporated therein. Paragraph 11, alleging that defendant agreed to maintain adequate insurance for plaintiff so as to fully indemnify plaintiff, embodies a promise to achieve a definite result. That the alleged agreement did not specify a particular amount of insurance, as in *Ryan Ready Mixed Concrete Corp. v Coons* (25 AD2d 530), relied upon by Special Term, does not alter this conclusion. The meaning of the phrase "fully indemnify" is plain and definite. The use of the phrase, as opposed to a fixed amount of insurance, may be explained on the basis that the insured's needs might change during the term of the insurance contract. It is well-established law that the six-year Statute of Limitations is to be applied where a contractual agreement entails an undertaking to achieve a specific result, a duty far greater than the common-law one of due care (*Boecher v Borth,* 51 AD2d 598; 1 Weinstein-Korn-Miller, NY Civ Prac, par 214.14). This rule is applicable even in cases of medical malpractice, which has received the special attention of the Legislature in the provisions of CPLR 214-a, shortening the limitations period to two and a half years (*Robins v Finestone,* 308 NY 543; 1 Weinstein-Korn-Miller,

NY Civ Prac, par 214-a.07). Thus, it is clear that in this case, the second cause of action, alleging breach of contract, should not have been dismissed.

Justice SANDLER in his dissent in this case has gone further and concluded that even without the allegations of defendant's promise to achieve a specific result, the contract cause of action would be timely under the case of *Sears, Roebuck & Co. v Enco Assoc.* (43 NY2d 389), as this claim is one for damages to property or pecuniary interests only and arises out of a breach of the implied contractual obligation to exercise due care in the performance of the agreed services. It may well be that the logic of extending the holding of the *Sears, Roebuck* case to the present case is unassailable. However, the Second Department in *Adler & Topal v Exclusive Envelope Corp.* (84 AD2d 365) has recently distinguished the *Sears, Roebuck* case from one similar to the present case on the basis of the specificity and formality of the agreement out of which the action arose against the architects in *Sears, Roebuck* (*supra*). We share with the Second Department the belief that the rationale and policy of the *Sears, Roebuck* case were not intended to extend to a case such as this. The proposed extension of the rule pronounced in the *Sears, Roebuck* case does not pay due deference to the legislative pronouncement of CPLR 214 (subd 6), establishing a three-year limitations period for "an action to recover damages for malpractice". Viewed from a practical perspective, the difference between tort damages and contract damages will not usually be substantial. If a six-year Statute of Limitations is then to be applied to all actions arising out of contractual obligations which seek to redress injuries to property or pecuniary interests only, and the two and a half year Statute of Limitations period of CPLR 214-a is to be applied to all medical malpractice actions which seek to redress personal injuries, there would be virtually no cases remaining within the scope of CPLR 214 (subd 6), though that subdivision is broadly phrased. Nearly all "malpractice" actions against attorneys, accountants, architects, surveyors, and perhaps insurance brokers would fall within the rule providing for the six-year limitations period as these actions regularly arise out of a contractual

relationship and involve injury to property or pecuniary interests only. At the same time, most malpractice actions against doctors fall within the provisions of CPLR 214-a as personal injuries are ordinarily involved. What role is left for the three-year limitations period of CPLR 214 (subd 6) other than malpractice actions against architects arising from the collapse of structures which result in personal injuries? If CPLR 214 (subd 6) were to be assigned such a curtailed scope, it would appear to us that we would merely be giving lip service to "acknowledging the Legislature's general address to malpractice claims (CPLR 214, subd 6)" (*Sears, Roebuck & Co. v Enco Assoc., supra,* p 395).

While reinstating the contract claim, on the basis of the allegation of a promise to achieve a definite result, we must note the improbability of the allegations contained therein. First, for a broker to promise a client full indemnification is a risky proposition as the broker surely knows that he is removed from the vital sources of information needed to achieve that desired objective. Further, the desire of any insured to have such all-encompassing insurance protection is most likely to be carried out by an insurance broker for the simple reason that an insurance policy providing full indemnification, whether that goal is achieved by providing a higher monetary amount of coverage or by excluding the coinsurance clause, is more expensive than one which provides less than full indemnification in any given case. Presumably, a broker's commissions are based directly on the premiums incurred by the insured. However, these are matters which must be left for further fact-finding proceedings; on this motion we are presented with a complaint, buttressed by affidavits, which alleges precisely such a promise for full indemnification and a breach of that promise.

■ We have previously concluded that plaintiff may not avail itself of the six-year limitations period even as to that portion of its claim based upon the negligent performance of defendant's contractual obligations. Thus, the three-year limitations period applies to the first cause of action, that of negligence, in its entirety. The negligence cause of action was properly dismissed as the cause of action accrued no later than the date of the damage to plaintiff's

premises, February 17, 1975, which was more than three years prior to the commencement of this action. In *Sosnow v Paul* (43 AD2d 978, affd 36 NY2d 780), plaintiff retained defendants — licensed architects — in June, 1961 to prepare all drawings and specifications for several residential apartment buildings. The buildings were completed in accordance with the defendants' plans in April, 1965. Thereafter, plaintiff became aware that the buildings were exhibiting cracks and bulges. They commenced an action in September, 1971. The issue on appeal was solely the time of accrual of the cause of action, be it a contractual or negligence claim (although the parties stipulated that the applicable limitations period was three years) (see *Matter of Paver & Wildfoerster [Catholic High School Assn.]*, 38 NY2d 669, 676). The Appellate Division bluntly stated, "The rule in cases where the gravamen of the suit is professional malpractice is now and has always been that the cause of action accrues upon the performance of the work by the professional" (*Sosnow v Paul, supra,* p 978). Finding that this holding did not bar a cause of action before it even accrued as plaintiff had a claim for the cost of correction of the defects or the loss in value due to the defects at the moment the buildings were completed, the Court of Appeals affirmed (36 NY2d, at p 782). Indeed, in the two cases quoted extensively by the dissent here in relation to the contract cause of action, the Court of Appeals adhered to this rule concerning the *time of accrual* of a cause of action. As noted, in *Matter of Paver & Wildfoerster (Catholic High School Assn.)* (*supra,* p 676), the *Sosnow* rule was explained. In *Sears, Roebuck & Co. v Enco Assoc.* (43 NY2d 389, *supra*), the Court of Appeals approved and actually implemented the rule. There, in May, 1967, plaintiff contracted with defendant architects to design a ramp system with snow-melting pipes. The project was completed in the spring of 1968 pursuant to defendant's plans. Cracks appeared in the ramps in May, 1970 and the action was brought in June, 1972. The Court of Appeals specifically held (43 NY2d, at p 398) "the claims of Sears, Roebuck against Enco Associates accrued on completion of the ramps in the spring of 1968. Because the present action was not commenced within three years

thereafter, Sears, Roebuck is now barred from recovery of damages under the law of damages with respect to liability in tort".

Even more on point is the case of *Gilbert Props. v Millstein* (40 AD2d 100, affd 33 NY2d 857). That case was a malpractice action against an attorney. Plaintiff was first damaged when a wall of a building adjoining his property collapsed in August, 1963. Plaintiff hired attorney Millstein and suit was brought against the City of New York and the board of education. The property had, in fact, been conveyed by those defendants to the New York City Housing Authority five months before the building collapsed. While the attorney obtained a judgment in the trial court against the city and the board of education, the time to file a notice of claim against the Housing Authority passed. It was not until the Appellate Division reversed the judgment for plaintiff against the city and the board of education in 1969 that plaintiff learned its attorney had sued the wrong party. The malpractice action against the attorney was commenced in August, 1970. The Appellate Division found the malpractice action untimely. In relevant part, this court stated (40 AD2d, at pp 102-105):

"The general holding, consistently followed in this State, is that a cause of action for malpractice accrues at the time of the wrongful acts or omissions of a defendant * * *

"[T]here is specific authority in this State and general authority elsewhere to the effect that the accrual of a cause of action for attorney malpractice is not postponed until time of discovery * * *

"The facts involving the negligent omissions of the defendant attorney, as alleged here, were patent and readily discoverable. The conveyance of title to the school building property to the Housing Authority appeared as a matter of record and, of course, the plaintiff knew or should have known that it was prosecuting its claim against the city and the Board of Education and that it had not verified and filed a claim against the Authority * * * If the plaintiff was in fact ignorant at these times of the existence of a cause of action in his favor against the defendant attorney, the facts were readily available to it. Accordingly, its

ignorance would 'not in itself lengthen the Statute of Limitations when the facts are available to him' * * *

"Finally, there is noted plaintiff's argument that the injury resulting from the malpractice occurred at the time of the determination of the Appellate Division setting aside its judgment obtained against the City of New York and the Board of Education; that the plaintiff's cause of action against the defendant then accrued because it was then that the plaintiff sustained its injury * * * But the reasoning in and the conclusion reached on such an approach to the problem are clearly unsupportable. The determinations of the appellate courts were not the cause of plaintiff's injury. Actually, the injury to the plaintiff occurred because of the loss of its cause of action against the Housing Authority and not because of the ultimate determination that plaintiff had no cause of action against the city and the Board of Education.

"The injury to the plaintiff was complete and its cause of action for all resulting damages accrued at the time of the loss of the cause of action against the Housing Authority by reason of the alleged negligent failure to file a claim against the Authority. It was then that plaintiff sustained its injury and not later when it is argued that its damages developed or became certain."

In this case, defendant's negligence, if any, occurred at some point prior to, but no later than, the date plaintiff's premises were vandalized, February, 1975. Indeed, no action of defendant taken after the date of damages to plaintiff's premises could have ameliorated any prior omission on its part and plaintiff does not allege or contend that any later action or omission of defendant is relevant to this action. The facts concerning the omission were "patent and readily discoverable" to the sophisticated agents of the corporate plaintiff as the business interruption provisions of the policy include a clearly marked contribution or coinsurance clause, as well as the monetary limit of liability, which plaintiff, far better than defendant, should have known was inadequate. The later dates, October, 1977, when the coinsurance defense was raised in plaintiff's action against American Guarantee, or April, 1978, when that defense was sustained, represent no more than dates

by which plaintiff certainly must have discovered the existence of the prior omission and the injury allegedly caused by the defendant. Indeed, these later events concern solely actions in the litigation between plaintiff and a third party, the insurer. Under the above case law, these later dates are not material.

Reliance on these later dates is an attempt to import the "foreign objects" exceptions from the body of medical malpractice law, that is, an attempt to delay the accrual of a cause of action until the time of discovery. The courts, though alerted to this analogy, have consistently rejected it in cases against architects (*Sosnow v Paul,* 43 AD2d 978, *supra*), attorneys (*Gilbert Props. v Millstein,* 40 AD2d 100, 104, *supra*) and accountants (*Alexander & Baldwin v Peat, Marwick, Mitchell & Co.,* 385 F Supp 230). No reason is now demonstrated to extend the "foreign objects" rule of medical malpractice to actions against insurance brokers.

Accordingly, we reinstate the contract claim, which was brought within the prescribed period of limitations, six years, of its accrual and affirm the dismissal of the negligence claim, which was not commenced within the prescribed period of limitations, three years, of its accrual. The effect of our ruling, should plaintiff establish the existence of a specific promise to achieve a definite result, is, much as was the effect of the *Sears, Roebuck* disposition (43 NY2d 389, 398, *supra*), that plaintiff will be "barred from recovery of damages under the law of damages with respect to liability in tort and is restricted to recovery of damages, if liability be established, under the law of damages with respect to liability for breach of contract." At this stage of the litigation, we need not determine how this might affect plaintiff's recovery, if any, or the admissibility of particular evidence (*supra*, p 397).

Finally, plaintiff's suggestion that the doctrine of "continuous treatment" should delay the time of accrual of the cause of action must be rejected. Unlike a recipient of the services of a doctor, attorney or architect, as to whom the doctrine has been applied, the recipient of the services of an insurance broker is not at a substantial disadvantage to question the actions of the provider of services. (See *Siegel v Kranis,* 29 AD2d 477, 480.)

Accordingly, the order of Supreme Court, New York County (TYLER, J.), entered February 27, 1980, granting defendant's motion to dismiss the amended complaint pursuant to CPLR 3211 (subd [a], par 5) should be modified, on the law, the motion should be denied with respect to the second cause of action, which should be reinstated, and the order should be otherwise affirmed, without costs.

SANDLER, J. (dissenting in part). I disagree with that aspect of the court's decision that declines to apply here the principle set forth in *Sears, Roebuck & Co. v Enco Assoc.* (43 NY2d 389) that the six-year contract Statute of Limitations (CPLR 213, subd 2) governs an action for damages to property or pecuniary interest where the obligations alleged to have been violated by the defendant (p 396) "whether verbalized as in tort for professional malpractice or as in contract for nonperformance of particular provisions of the contract, arose out of the contractual relationship of the parties".

Apart from the general importance of the issue, it is of more than academic interest in this case. For in *Sears, Roebuck,* the Court of Appeals reinstated, in addition to the contract cause of action, a separate tort action for professional malpractice that had not been commenced within three years, limiting both causes of action, however, to damages recoverable for contract liability. Moreover, the limited ground on which this court's decision has reinstated the contract cause of action severely, and erroneously, circumscribes the basis on which plaintiff may recover for a contractual violation.

Analysis of the issue presented appropriately starts with consideration of *Matter of Paver & Wildfoerster (Catholic High School Assn.)* (38 NY2d 669), in which the Court of Appeals reviewed carefully the evolution of the pertinent then controlling rules in the context of a demand for arbitration that was opposed on the ground that the claim sought to be arbitrated would have been barred by the Statute of Limitations had it been asserted in a court of the State. (See CPLR 7502, subd [b].) The claim was that architects, who had agreed with the owner to supply professional services in the construction of a high school, were in part responsible for leakages first observed after the

owner took occupancy because "of defects in design and faulty supervision".

The Court of Appeals stated preliminarily (38 NY2d, at p 672): "In determining whether a claim for property damage is barred by the Statute of Limitations, however, the court should not be constrained by the special rules developed largely in personal injury actions and which depart from the general principle that time limitations depend upon, and are confined to, the form of the remedy."

The court then went on (*supra,* pp 675-676) to examine those authorities which had applied the negligence or malpractice limitations where the wrong complained of, although arising from a breach of a contractual obligation, essentially consisted of a failure to use due care in the performance of that obligation:

"Significantly, many of these cases were decided in the context of causes of action to recover damages for direct or underlying personal injury (e.g., *Webber v Herkimer & Mohawk St. R. R. Co.,* 109 NY 311, 313) * * * In personal injury cases, it has been said with verbal plausibility that since the 'gravamen' of the action is the misconduct of the defendant, the action sounds 'essentially' in tort. On the other hand, however, when the action is one for damages to property or pecuniary interests only, where there is a contractual agreement between the parties, the general tendency has been to allow the plaintiff to elect to sue in contract or tort, as he sees fit * * * Indeed, even in personal injury actions, the rule of the *Webber* case has been somewhat eroded * * *

"In any event, whatever its validity today and whatever its relation to larger general principles, the rule of the *Webber* case and those in its wake should not be blanketed to cover arbitration".

In *Sears, Roebuck* (43 NY2d 389, *supra*), the Court of Appeals addressed the same issue in an action at law. The complaint, also against architects, set forth three causes of action: the first for negligence in the preparation of design and plans, the second for breach of implied warranty of fitness for the purposes intended, and the third for breach of contract. It was alleged in this cause of action (p 394)

that "the architects contracted to provide design, normal structural, mechanical and electrical engineering services and that they breached the contract by neglect or lack of professional care and in improperly designing the ramps".

In holding that the action was governed by the six-year contract Statute of Limitations, the Court of Appeals reaffirmed and amplified the analysis previously set forth in *Paver* (*supra*). The court repeated (43 NY2d, at pp 394-395) that "the choice of applicable Statute of Limitations is properly related to the remedy rather than to the theory of liability"; noted as an apparent exception to this principle those cases that had turned on what was called the " 'reality' " or the " 'essence' " of the particular theory of liability; quoted the *Paver* observation that " 'many of these cases were decided in the context of causes of action to recover damages for direct or underlying personal injury' "; and again stated that "different policy considerations were involved * * * in actions for damages to property or pecuniary interest only".

Concluding that the contract Statute of Limitations applied, the court noted (*supra,* p 395) that it did so "[w]ithout intending to disturb the holdings in the line of cases that deal with claims for personal injuries for malpractice on the part of members of one of the professions and acknowledging the Legislature's general address to malpractice claims (CPLR 214, subd 6)".

The controlling rule of law was set forth in terms whose applicability to the instant case seem to me free from any possible doubt (*supra,* p 396):

"All obligations of the architects here, whether verbalized as in tort for professional malpractice or as in contract for nonperformance of particular provisions of the contract, arose out of the contractual relationship of the parties — i.e., absent the contract between them, no services would have been performed and thus there would have been no claims. It should make no difference then how the asserted liability is classified or described, or whether it is said that, although not expressed, an agreement to exercise due care in the performance of the agreed services is to be implied; it suffices that all liability alleged in this complaint had its

genesis in the contractual relationship of the parties. (Cf. *Brick v Cohn-Hall-Marx Co.*, 276 NY 259, 263-264; see Prosser, Torts [4th ed], § 92, p 613.)

"As a consequence, the range of proof to be adduced to establish liability will be correspondingly broad. That is to say, not only will evidence be admissible, as in the normal contracts case, which might tend to establish breach of a particular term of the contract between the parties; it will also be open to plaintiff owner to introduce evidence, including expert testimony, which might demonstrate that the architects failed to use due and reasonable care in the performance of their obligations under the contract or that their performance fell short of the applicable professional standards — in effect the same scope of admissibility as in the instance of what has in the past been referred to as a claim for professional malpractice."

Finally, the court considered the problem of damages that would confront the trial court in a case in which, as in this case, the tort claims were barred by the three-year Statute of Limitations (43 NY2d, at p 396): "In principle, because this action was not commenced within three years after accrual of the owner's claims, proof on the issue of damages should be limited to that admissible under the law of damages for contract liability."

I am unable to discern any basis for not applying here the controlling rules set forth with meticulous care in *Sears, Roebuck* (*supra*).

This is an action to recover for damage to pecuniary interest only in which the obligations of the defendant "whether verbalized as in tort for professional malpractice or as in contract for nonperformance of particular provisions of the contract, arose out of the contractual relationship of the parties — i.e., absent the contract between them, no services would have been performed and thus there would have been no claims" (*supra,* p 396). Accordingly, the six-year contract Statute of Limitations applies no matter "how the asserted liability is classified or described, or whether it is said that, although not expressed, an agreement to exercise due care in the performance of the agreed services is to be implied; it suffices that all

liability alleged in this complaint had its genesis in the contractual relationship of the parties." (*Sears, Roebuck & Co. v Enco Assoc.,* 43 NY2d 389, 396, *supra.*)

In finding the *Sears, Roebuck* principles inapplicable in this case, the court's opinion suggests that the Court of Appeals did not mean in *Sears, Roebuck* what the opinion said, that the Court of Appeals most likely did not intend so sweeping a limitation on the previously understood scope of the malpractice limitation sections. This speculation seems to me insupportable. The *Sears, Roebuck* opinion discloses that the malpractice sections were carefully considered.

The action in *Sears, Roebuck* (*supra*) was classically a professional malpractice action. Indeed one of the causes of action reinstated by the Court of Appeals was specifically so described in the opinion. Throughout the opinion the words "negligence" and "malpractice" were used interchangeably. The explicit statement in the opinion (p 395) that it was not intended "to disturb the holdings in the line of cases that deal with claims for personal injuries for malpractice on the part of members of one of the professions" strongly implies a different intent with regard to claims for other than personal injuries. And in a footnote that seems to me dispositive (43 NY2d, at p 395, n 1) the opinion meticulously detailed proposals to amend CPLR 214 (subd 6) to include within its ambit claims for malpractice arising out of contract, and noted that such proposals had never been adopted.

In the light of the foregoing, I see no warrant whatever for not applying the *Sears, Roebuck* rule in accordance with the usual and accepted meaning of the words used in the opinion. Nor should it be overlooked that the rule formulated quite precisely interprets the statutory language in the relevant sections, which prohibit "an action to recover damages for malpractice" commenced after three years (CPLR 214, subd 6), but allow six years to commence an action "upon a contractual obligation or liability express or implied" (CPLR 213, subd 2). If the practical consequences of applying these sections as quite accurately interpreted by the Court of Appeals are undesirable, the

problem presented would be appropriate for corrective legislative action.

In *Adler & Topal v Exclusive Envelope Corp.* (84 AD2d 365), the Second Department concluded (pp 367, 368) that the decision in *Sears, Roebuck* turned on the circumstance that there was "a detailed written agreement which provided for specific and sophisticated services," and that the ruling in that case "should not be expanded" to cover an "informal underlying oral agreement". But the Court of Appeals did not say in *Sears, Roebuck* that the six-year contract Statute of Limitations was to govern an action for damage to pecuniary interest where the obligations arose out of "a detailed written agreement". The equivalent words used in the formulation of the rule by the Court of Appeals, and indeed twice repeated, were "contractual relationship". It is not lightly to be assumed that the Court of Appeals did not intend this phrase to be interpreted according to its normal and accepted meaning. Nor is there any basis in the contract Statute of Limitations, which the Court of Appeals was interpreting, for a distinction between "detailed written agreement" and "an informal, underlying oral agreement", the statutory language being "an action upon a contractual obligation or liability express or implied". (See CPLR 213, subd 2.)

Accordingly, the order of the Supreme Court, New York County (TYLER, J.), entered February 27, 1980 granting the motion of defendant Flatto to dismiss the amended complaint on the ground that it was barred by the Statute of Limitations, should be reversed, on the law, the motion to dismiss should be denied, and the complaint should be reinstated.

ROSS, MARKEWICH and FEIN, JJ., concur with BIRNS, J. P.; SANDLER, J., dissents in part in an opinion.

Order, Supreme Court, New York County, entered on February 27, 1980, modified, on the law, the motion to dismiss the amended complaint pursuant to CPLR 3211 (subd [a], par 5) denied with respect to the contract cause of action, which is reinstated, and the order otherwise affirmed, without costs and without disbursements.