Caroline C. Piper, Appellant, *v.* John L. Hoard, Respondent.

If, at the time of the discovery of a fraud, the party injured has a legal capacity to act and to contract, his right of action accrues and the statute of limitations begins to run against it, irrespective of the degree of intelligence possessed by him, or of his freedom from undue influence, or his ability to resist it.

The fact, therefore, that the person injured was, after a discovery of fraud, induced by other fraudulent representations, or by undue influence, to refrain from prosecuting until the time limited by the statute has expired, is no answer to a plea of the statute. It must be made to appear that at the time of the discovery he had not the legal capacity to act.

Accordingly *held,* where the owner of real estate was induced to convey the same by fraudulent representations and undue influence on the part of the grantee, and after discovery of the fraud commenced an action against the grantee to set aside the conveyance because thereof, but was induced by further fraudulent representations and undue influence to discontinue the same, that another action to set aside said conveyance, commenced more than ten years after the discovery of the original fraud, was barred by the statute.

(Argued April 21, 1887; decided October 4, 1887.)

Appeal from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made January 13, 1885, which affirmed a judgment in favor of defendant, entered upon a decision of the court on trial at Special Term.

This action was brought in February, 1881. The nature of it and the material facts are stated in the opinion.

*A. M. Beardsley* for appellant. The complaint was sufficient to present the fraudulent representations, as a cause of action and ground of recovery on behalf of ·the plaintiff. (*Maher* v. *Hibernia Ins. Co.,* 67 N. Y. 283, 290; *Russell* v. *Brownell,* 20 N. Y. W. Dig. 504; *Hammersley* v. *De Biel,* 12 Cl. & Finn. 46; Pomeroy on Spec. Perf. § 328; 2 Kent's Com. [12th ed.] 172, 173 m. p.; *Hennsden* v. *Cheney,* 2 Vern. 150; *Montefiori* v. *Montefiori,* 1 W. Blacks. 363, 364; *Berrisford* v.

*Milward,* 2 Atk. 49; Atherly on Family Set. 27; Law Lib., chaps. 34, 35, m. p. 484–500; 1 Story's Com. on Eq. §§ 271, 387; *Storrs* v. *Baker,* 6 Johns. Ch. 173; *Redmond* v. *Redmond,* 1 Vern. 347; *Neville* v. *Wilkinson,* 1 Brown's Ch. C. 543; *Harvey* v. *Ashley,* 3 Atk. 607, 610; *Lamlee* v. *Haanman,* 2 Vern. 499; *Webber* v. *Farmer,* 4 Brown's Parl. C. 170; *Scott* v. *Scott,* 1 Cox, 366.) If the facts set forth in the complaint entitle the plaintiff to any relief, legal or equitable, her action will not fail. (*Price* v. *Brown,* 10 Abb. N. C. 67; *Hall* v. *Hall,* 38 How. Pr. 97.) The findings of fact and conclusions of law of the court below, that the statute of limitations was a bar to this action, were erroneous. (*Guillotel* v. *Mayor, etc.,* 25 Alb. L. J. 315; 87 N. Y. 441; *Gates* v. *Andrews,* 37 id. 657; 5 Mason C. C. Rep. 154; *Sears* v. *Shafer,* 2 Seld. 268; *Sands* v. *St. John,* 36 Barb. 628; *Sharp* v. *Leach,* 31 Beav. 491.) Direct evidence of undue influence is not necessary. It may be, and most frequently is, a legitimate inference from the facts and circumstances in the case. (*Reynolds* v. *Root,* 62 Barb. 250; *Gowland* v. *De Faria,* 17 Ves. 25; Kerr on Fraud and Mistake, 301; 35 N. Y. 594; 2 Seld. 272; 65 Barb. 346, 356; 73 N. Y. 502; 75 id. 99; *Cook* v. *La Motte,* 15 Beav. 234, 240; 1 Greenl. Ev. § 42; Best on Presump. 187; 2 Pothier on Oblig. [Evans' ed.] 252, 253; 1 Starkie Ev. 37; *Oliver* v. *Berry,* 53 Me. 206; Cow. & H. Notes, 298; Best on Presump. [Morgan's Notes] §§ 321, 405; Best on Presump. 203 and marg.; *Sharp* v. *Leach,* 31 Beav. 491; *Oldham* v. *Oldham,* 5 Jones' Eq. 89 [N. Car.]; Dwarris on Stat. 637, 712, marg.; *Hardman* v. *Bower,* 39 N. Y. 198.)

*A. H. Prescott* for respondent. The grantor was, in all respects, legally competent to make the deed to the defendant. (*Blanchard* v. *Nestle,* 3 Denio, 37.) Our law does not distinguish between different degrees of intelligence; it does not deny to a man of very feeble mind the right to make contracts and manage his own affairs; in the absence of fraud, proof of mere imbecility in the grantor, however great it may be, will not avoid his deed; there must be a total want of understanding.

(*Jackson* v. *King*, 4 Cow. 207; *Stewart* v. *Lispenard*, 26 Wend. 255; *Delafield* v. *Parish*, 28 N. Y. 7; *Van Guysling* v. *Van Keuren*, 35 id. 70; *Jackson* v. *Van Deusen*, 5 Johns. 144, 157.) In all cases where the plaintiff has concurrent remedies at law or in equity the limitation is six years. (*Foot* v. *Farrington*, 41 N. Y. 164; *Loder* v. *Hatfield*, 71 id. 92; *Sanford* v. *Sanford*, 62 id. 553; *Miner* v. *Beekman*, 50 id. 337; *Hubbell* v. *Sibley*, id. 468; *Roberts* v. *Sykes*, 8 Abb. 345; *Bruce* v. *Tilson*, 25 N. Y. 194.) The cause of action accrued when the defendant took possession under his deed in 1859. (*Mayne* v. *Griswold*, 3 Sandf. 464; Code, § 106; Hood on Lim. of Act. § 106.) When the statute has begun to run against the ancestor, it is not suspended by any statutory disability in the heir at the time of the descent cast. (*Rogers* v. *Brown*, 61 Mo. 187; *Swearingen* v. *Robertson*, 39 Wis. 462.) The question as to disabilities is one of legislative power, and does not belong to the courts. (Banning on Lim. 85; Wood on Lim. 496.)

FINCH, J. The facts of this case are only important as they bear upon the inquiry when the cause of action accrued, and the statute of limitations began to run. The plaintiff, as sole heir of her father, seeks to set aside a deed made by him in February, 1859, to the defendant, and a subsequent settlement which confirmed it, on the ground that both were the product of fraud and undue influence. A jury to whom special issues were submitted decided the facts in favor of the plaintiff, and their conclusion was adopted by the court. We are to assume, therefore, that the deed and the settlement were fraudulent, and might have been avoided by Frederick Piper in his lifetime at any moment after they came into existence. But the action is conceded to have been of a character solely cognizable in equity, and founded upon a fraud, and the statute did not begin to run until the discovery of that fraud. The trial judge found as a fact that, for a period of sixteen years before hs death, Frederick Piper could have maintained an action for the same substantial relief now sought; and it is involved

in that finding and more plainly disclosed in the opinion that during all that time he had a full knowledge of the facts constituting the fraud. While he was somewhat weak-minded, he was by no means destitute of mental capacity or understanding, and was able to know and comprehend the facts which transpired. He knew that he made the deed to Hoard, and the consideration for it. He knew also, for he was expressly told, that the conveyance could be avoided for fraud; and after the whole matter had been explained to him, not only by his wife but by the counsel chosen to protect and enforce his rights, he gave his consent to the commencement of an action which alleged that fraud and sought to rectify it. At that date he knew all the facts and their wrongful and fraudulent character. The only influence then operating upon him was the perfectly proper influence of his wife and his counsel. Mr. Throop testifies that the whole situation was explained to him; that he was made to understand it, although with some difficulty and delay; and that when he did consent he answered intelligently and rationally. This witness was the first one called on behalf of the plaintiff, and was the counsel chosen to redress the existing wrong. The fraud at that moment was complete. It had been discovered, and was fully known to Piper and his advisers; so fully that it served to found an action in his behalf as complete in its allegations of fraud and undue influence as the one before us. The statute of limitations began then to run, and of course continued to run unless stopped by some statutory provision. (Code of Civ. Pro. § 408.) It may be true, and doubtless is true, that Piper did not realize as clearly and distinctly as others the force of the facts brought to his knowledge, and the extent and scope of the wrong which had been done him. But he was neither idiot nor lunatic; he had memory, sense and judgment; a mental capacity of low grade and a lack of independence and will, but yet sufficient ability to understand and comprehend; and that supplemented by the aid and advice of intelligent and competent friends. It is impossible not to see that at this point of time a discovery of the fraud had

occurred.   I do not understand that the question whether such a discovery has taken place depends upon the mental condition of the party injured, where he has legal capacity to act and to contract, nor upon his freedom from undue influence or ability to resist it.   If he has ascertained the facts which constitute the fraud and so has discovered its existence, the statute begins to run irrespective of the degree of intelligence possessed by the injured party, and whether he has enough of courage and independence to resist a hostile influence, and assert his rights or not.   In either event there has been discovery of the fraud; the right of action has fully accrued; and the statute begins to run.   Soon after the action of Frederick Piper to cancel the deed had been commenced, the defendant Hoard seems to have regained his influence and control over him.   The defendant induced him to discontinue his action; making a new arrangement to which the wife was a party; and assuming a new liability as a consideration for the conveyance.   This settlement 'the jury and the court found was itself fraudulent. It indicates a new exertion of undue influence to nullify and avert the grantor's effort for redress.   That finding leaves the original fraud unpurged, and the right of action it gave undischarged, but I am unable to see how it could stop the running of the statute of limitations.   The law provides for no such disability.   We cannot add it to the statute.   The new wrong might possibly give a new right of action, but could not suspend the existence of the old one.   The cases cited in behalf of the plaintiff do not reach the difficulty.   Most of them relate merely to the effect of laches or acquiescence as excused or disarmed by the continued presence of undue influence, and have no relation to the peremptory command of a statute. (*Sharp* v. *Leach*, 31 Beavan, 491; *Gowland* v. *De Faria*, 17 Vesey, 25; Kerr on Fraud, 301.)   In one the question arose over the adverse possession of a slave under a statute of the State; and the actual possession was held not to be adverse, because of a continued undue influence which prevented consciousness of any adverse character attending the possession. (*Oldham* v. *Oldham*, 5 Jones N. C. Eq., 89.)   Here the

statute began to run. There was a time when Piper discovered the fraud; when the facts and their character were explained to him; when he was for the moment free from the domination of Hoard, and acting in defiance of it; and when he consented to initiate an action to set aside the deed. We cannot justly say that he did not then and there not only discover but realize to some extent the fraud practiced upon him. That set the statute running, and it continued to run unless we import into it a new disability not among its terms. (Code of Civ. Pro. § 396.) We therefore see no answer to the defense of the statute.

It was sufficiently pleaded. The Code provides that the right of action is deemed to have accrued when the fraud is discovered and not sooner (§ 382), and the answer pleads that it did not accrue within six years before the commencement of the action. That was enough.

It is claimed, in addition, that the complaint contained a cause of action in the plaintiff's own right, and not derived from her father, and which she asserted in due season after the disability of infancy was ended. That cause of action is said to exist in the false representations made to her mother by Hoard, to induce the marriage contract and which he could be required to make good to the issue of the marriage. But the complaint does not rest upon any such right. That cause of action concedes the validity of the deed to Hoard, and seeks to impose a trust upon the property conveyed by it and is utterly inconsistent with the allegations of the complaint, which deny wholly the validity of the conveyance and the legal title of Hoard. The suggested cause of action was very properly made the subject of a new suit which is itself before us on appeal, and should not be further considered here.

The judgment should be affirmed with costs.

All concur, except Earl, J., not sitting.

Judgment affirmed.