Chief Judge Breitel.
In consolidated arbitration proceedings under CPLR 7503 (subds [a], [b]), petitioner architects *672 appeal. The building owner demanded arbitration under building construction agreements against the architects and the contractor. In the first proceeding the architects sought a stay and the owner, in the other proceeding, sought to compel arbitration and to consolidate the separate proceedings. Supreme Court consolidated the proceedings and directed the parties to arbitrate. The Appellate Division affirmed, two Justices dissenting. Only the architects appeal.
The issue is whether the owner’s claim for damages to its building, allegedly caused by the architects’ improper performance of their contractual obligations, is barred by the Statute of Limitations.
There should be an affirmance. CPLR 7502 (subd [b]) provides that, if, at the time that a demand for arbitration was made, the claim sought to be arbitrated would have been barred by the Statute of Limitations had it been asserted in a court of the State, a party to the arbitration agreement may assert the statute as a bar in an application to the court for a stay of arbitration. In determining whether a claim for property damage is barred by the Statute of Limitations, however, the court should not be constrained by the special rules developed largely in personal injury actions and which depart from the general principle that time limitations depend upon, and are confined to, the form of the remedy. The remedies available in arbitration are, of course, not confined to traditional forms at law. Thus, if a claim is substantially related to matters encompassed by the substantive agreement, it is immaterial, in applying the Statute of Limitations, whether it lies in "contract” or "tort”. Hence, the owner’s claim against the architects, although cognizable in law in either contract or tort malpractice, was timely asserted within the six-year period of limitations.
The Catholic High School Association is the owner of the John A. Coleman Catholic High School in Ulster County. On February 21, 1966, the architects agreed with the owner, on the standard form agreement of the American Institute of Architects, to supply professional services by designing and generally overseeing the construction of the high school. As the construction progressed, the architects would certify the contractor’s -applications for payments. Such certification would be a representation by the architects that, to the best of their knowledge, the quality of the work was in accordance with the contract documents. Warwick Construction, a party *673 in the present proceedings, was engaged as the general contractor.
Shortly after the owner took occupancy on July 1, 1968, there were serious leakages into the building. Both the architects and the contractor were notified. The contractor made several attempts to correct the problem, but to no avail. Consequently, the owner withheld from the contractor $15,000 of the final payment. The architects were paid in full; the architects’ final payment was made to them on November 19, 1969, before fault was believed attributable to the architects.
The owner continued its complaints to the architects and the contractor until 1973. In 1973, the owner finally engaged a waterproofing company, Horn Waterproofing, to correct the leakage. After submitting a report and proposal for extensive waterproofing work, Horn advised the owner to try to recover the costs from the architects. This was suggested because the Horn report indicated that the architects, as well as the contractor, were responsible for the leakage. This was the first time, in 1973, that the owner had reason to believe that the architects were at fault.
The right to demand arbitration under the agreement was a contractual one. Thus, as the Appellate Division unanimously agreed, the demand was timely made within the six-year period of limitation insofar as the arbitration clause was involved (CPLR 213, subd 2; see Matter of Travelers Ind. Co. [De Bose], 226 NYS2d 16, 20; Reconstruction Finance Corp. v Harrisons & Crosfield, 204 F2d 366, 369, cert den 346 US 854; see, generally, Arbitration—Limitations—Laches, Ann., 37 ALR2d 1125, 1126-1127).
CPLR 7502 (subd [b]) provides, however, that "[i]f, at the time that a demand for arbitration was made * * * the claim sought to be arbitrated would have been barred by limitation of time had it been asserted in a court of the state, a party may assert the limitation as a bar to the arbitration on an application to the court as provided in section 7503 [application to stay arbitration]”. The purpose of the statute was to apply the Statute of Limitations referable to the substantive issue to arbitration proceedings, and to permit it to lie as a bar to the arbitration proceeding (see NY Legis Annual, 1959, p 12). As was stated in Matter of Cohen (17 AD2d 279, 282): "Section 1458-a [the predecessor to CPLR 7502 (subd [b])] was proposed upon the basis that 'The same considerations of public policy which make stale claims in actions at law *674 unenforceable also apply to disputes in arbitration.’ Specifically, it was enacted to eliminate the confusion theretofore existing in the decisions as to whether a proceeding in court could be invoked to enforce the defense of the Statute of Limitations or whether the applicability of the defense was in the sole discretion of the arbitrators. (N. Y. Legis. Annual, 1959, pp. 12,13, 27.)” (See Matter of Plastic Molded Arts Corp. [A & H Doll Mfg.] 23 Misc 2d 839, 841, affd 11 AD2d 668; Matter of New York Cent. R. R. Co. [Erie R. R. Co.] 30 Misc 2d 362, 368-369; Skidmore, Owings & Merrill v Connecticut Gen. Life Ins. Co., 25 Conn S 76, 88-91; cf. Fourth Preliminary Report of the Advisory Comm on Practice and Procedure, NY Legis Doc [1960], No. 20, at pp 77-78). In proceedings authorized by a prior agreement to arbitrate future disputes, it is for the court to determine whether the claim, and therefore the arbitration, is barred by the Statute of Limitations (see Matter of Caudill, Rowlett, Scott [Board of Educ.], 47 AD2d 610; Matter of Schlaifer [Kaiser], 46 AD2d 850; Matter of Andresen & Co. v Shepard, 45 AD2d 578, 579; Matter of Cohen, 17 AD2d 279, 283, supra [by implication]; Hammerstein v Shubert, 127 NYS2d 249, 251; 8 Weinstein-Korn-Miller, NY Civ Prac, par 7502.14).
Thus, it is necessary to consider if, at the time the demand was made, the claim sought to be arbitrated would have been barred by the Statute of Limitations had it been asserted in court (CPLR 7502, subd [b]). The "claim” in the instant case, as stated in the demand for arbitration, is one for "[b]reach of contract” by the architects, "by reason of defects in design and faulty supervision in the execution of their contract with the claimant”. More specifically, the owner’s petition alleges architectural omissions in design, that the plans and specifications were contradictory, and that the architects failed to notice or report to the owner that the contractor had failed to comply with certain specifications. Also in its petition, however, in addition to breach of contract, the owner alleged that the architects "failed to fulfill their common law duty to exercise reasonable care and skill in the performance of their contracts.” Thus the owner’s claims would be cognizable in law in either contract or tort malpractice.
To be sure, it has been said that the law in this State, in applying the Statute of Limitations, will look to the "reality” or the "essence” of the action and not its form (see, e.g., Brick v Cohn-Hall-Marx Co., 276 NY 259, 264; Schmidt v Merchants *675 Desp. Transp. Co., 270 NY 287, 303). Thus, when the wrong complained of, although arising from a breach of a contractual obligation, essentially consists of a failure to use due care in the performance of that obligation, it has been held that the "negligence” or "malpractice”, and not the "contract”, Statute of Limitations applies (see, e.g., Webber v Herkimer & Mohawk St. R. R. Co., 109 NY 311, 314-315; Calhoun v Gale, 29 AD2d 766, 767, affd 23 NY2d 756; Alyssa Originals v Finkelstein, 22 AD2d 701, affd 24 NY2d 976; Carr v Lipshie, 8 AD2d 330, 332, affd 9 NY2d 983; see, also, Blessington v McCrory Stores Corp., 305 NY 140, 147-148).
Significantly, many of these cases were decided in the context of causes of action to recover damages for direct or underlying personal injury (e.g., Webber v Herkimer & Mohawk St. R. R. Co., 109 NY 311, 313, supra; Calhoun v Gale, 29 AD2d 766, 767, affd 23 NY2d 756, supra; Gautieri v New Rochelle Hosp. Assn., 4 AD2d 874, affd 5 NY2d 952; Loehr v East Side Omnibus Corp., 259 App Div 200, 202-203, affd 287 NY 670; but cf., e.g., Robins v Finestone, 308 NY 543, 546; Stitt v Gold, 33 Misc 2d 273, 274, affd 17 AD2d 642 [contract to cure found]). In personal injury cases, it has been said with verbal plausibility that since the "gravamen” of the action is the misconduct of the defendant, the action sounds "essentially” in tort. On the other hand, however, when the action is one for damages to property or pecuniary interests only, where there is a contractual agreement between the parties, the general tendency has been to allow the plaintiff to elect to sue in contract or tort, as he sees fit (Prosser, Torts [4th ed], § 92, at p 621; see Board of Educ. of Cent. School Dist. No. 1 v Mancuso Bros., 25 Misc 2d 122, 123; Limitation Period—Building Contract, Ann., 1 ALR3d 914, 916-917; cf. Dentists’ Supply Co. v Cornelius, 281 App Div 306, 307, affd 306 NY 624 [waiver of tort and recovery in quasi-contract permitted]; but see Alyssa Originals v Finkelstein, 22 AD2d 701, affd 24 NY2d 976, supra; Carr v Lipshie, 8 AD2d 330, 331, affd 9 NY2d 983, supra). Indeed, even in personal injury actions, the rule of the Webber case has been somewhat eroded (see Victorson v Bock Laundry Mach. Co., 37 NY2d 395, 403; cf. Blessington v McCrory Stores Corp., 305 NY 140, 147, supra; 1 Weinstein-Korn-Miller, NY Civ Prac, par 214.13, at p 2-293).
In any event, whatever its validity today and whatever its relation to larger general principles, the rule of the Webber case and those in its wake should not be blanketed to cover *676 arbitration, an area of dispute determination not confined to the forms and procedural channels of the law. There is little authority, and none controlling, which has applied the Webber exception to arbitration as distinguished from actions at law. Recently, in Matter of Naetzker v Brocton Cent. School Dist. (50 AD2d 142), the rule was applied to an arbitration proceeding under facts remarkably like those in this case. And, it had been applied earlier in Matter of Caudill, Rowlett, Scott (Board of Educ.) (47 AD2d 610, supra). On the other hand, it has been said long ago and many times since that the Statute of Limitations only bars the remedy; it does not impair the underlying right (Johnson v Albany & Susquehanna R. R. Co., 54 NY 416, 424; accord, e.g., Hulbert v Clark, 128 NY 295, 297-298). Thus, logically, the period of limitations to be applied should, with exceptions not to be proliferated, depend upon the form of the remedy. The contrary rule which obtains in actions at law is especially inappropriate in arbitration proceedings, for the remedies available in arbitration are not confined to the traditional forms at law.
Moreover, an arbitration agreement may, with limited exceptions, encompass "any controversy * * •* arising * * * without regard to the justiciable character of the controversy”. (CPLR 7501.) (Interestingly, and significantly, a nonjusticiable controversy is one not cognizable in a court of justice.) Since the parties to a commercial arbitration agreement have elected not to be bound by strict rules of law, their desire should not be thwarted by application of a rule designed in a bygone day to shortstop stale and possibly fraudulent personal injury actions.
Thus, if the claim sought to be arbitrated is substantially related to the subject matter of the substantive agreement, as in this case, it will not be barred merely because it also would permit recovery in a tort action at law. To do otherwise would truly be to expand an originally limited special exception into a general principle, a consequence the Webber rule was never intended to spawn.
Sosnow v Paul (36 NY2d 780, affg on mem at App Div 43 AD2d 978), a nonarbitration case heavily relied upon by the architects, is inapposite. In the Sosnow case, the court was concerned exclusively with the time of accrual of a cause of action for architect’s malpractice. Indeed, there was no issue as to which period of limitation was applicable: the parties had agreed, rightly or wrongly, that the three-year statute *677 was applicable (43 AD2d, at p 978, supra). Notably, the Appellate Division’s implicit approval of this stipulation was cast in doubt by this court’s application of the contract measure of damages to the cause of action for the architect’s "malpractice” (36 NY2d, at p 782, supra).
At the root of the problem in assessing the boundary line between arbitration and dispute determination in courts of law is that in arbitration, as in this case, the parties submit to arbitration a complex of facts, however arranged, and not facts organized in the form of elements of causes of action at law. Thus, in this case the owner alleges and presumably will present a claim under its agreements with the contractor and the architects, described not necessarily in legal categorical terms but as a "breach” of the agreements. It will then be for the arbitrators to fashion the remedy appropriate to the wrong, if they find one, unconfined by the tight correlation of particular legal remedies to formal causes of action (see, e.g., Matter of Staklinski [Pyramid Elec. Co.], 6 NY2d 159, 163; 8 Weinstein-Korn-Miller, NY Civ Prac, par 7510.08). The court in such situation should not precensor the issues, the facts or the eventual possible determinations by the arbitrators (see Matter of Raisler Corp. [New York City Housing Auth.] 32 NY2d 274, 282; Matter of Spectrum Fabrics Corp. [Main St. Fashions] 285 App Div 710, 714, affd 309 NY 709; 8 Weinstein-Korn-Miller, NY Civ Prac, par 7506.12).
The arbitration limitation statute was hardly intended to do that. Its purpose was to bar stale claims, not to fragmentize claims into legal categories, the very categories from which arbitration frees those who choose arbitration as their mode of dispute determination.
It is also evident that a complex of facts in legal analysis may present a facet of contract law, or tort law, of quasi-contracts, or equity jurisprudence. These are legal concerns and legal definitional boundaries which prescribe the mode of judicial dispute determination. These are not the concerns or the boundaries of arbitrational dispute determination, nor should they be made so indirectly.
To be sure, the arbitration limitation statute bars untimely claims, otherwise of a justiciable character, the only kind to which the limitation could apply. Those are claims which on a view of the whole complex of facts would be barred in an action at law. It does not apply and should not apply to claims which, under limited exceptions to general legal principles, *678 would be barred at law just because, on some aspect, the right to elect one remedy rather than another is barred for limitations purposes—a condition largely confined to personal injury and professional malpractice. Put another way, if a claim in the justiciable category on no view of the facts could survive a time-bar in any kind of action at law, it would also be time-barred in arbitration, but not otherwise.
The discussion would not be complete without observing, as one should again and again, that the distinctions between contracts and torts are not contained in the natural order but are the products of the faltering legal grammar that men apply to the facts of life in order to make them tractable to verbalized rules. The distinctions, however, are not to be confused with pronouncements from Mt. Sinai. Karl Llewellyn, in a characteristic footnote, pointed the issue: "One recalls also from the Legal Apocrypha: 'And the Lord said: Let there be contracts and let there be torts. And it was so. And He divided contracts from torts. And darkness, etc.’ How apocryphal this notion of the nature of things is, our small samplings show: Washington, 1940, shows tort and contract merging in regard to bad food; Washington, 1958, builds a principle of proof of damages which covers contract and tort alike; Ohio, 1957, is breaking the warranty action loose from 'privity’ in regard to an electric cooker; New York, 1958, is spreading actionable misrepresentation over into the field of contract formation—not with respect to out-of-pocket 'reliance’ damages, but with respect to lost-bargain damages, as well.—Yet the Legal Apocrypha still wield vicious power” (Llewellyn, The Common Law Tradition, p 346, n 315b; to Llewellyn’s illustrations may be added, New York, 1975, "contract” cause of action for "breach of implied warranty” sounds in tort strict products liability (Victorson v Bock Laundry Mach. Co., 37 NY2d 395, 401-403, supra).
Accordingly, the order of the Appellate Division should be affirmed, with costs.