VINCENT J. BARATTA, Respondent, v EDWARD V. KOZLOW-
SKI et al., Appellants.

Second Department, June 27, 1983

APPEARANCES OF COUNSEL

*Winthrop, Stimson, Putnam & Roberts* (*Stephen A. Weiner* of counsel), for Bank of Babylon and another, appellants.

*Joseph J. Marcheso* for Edward V. Kozlowski, appellant.

*Lunney & Crocco* (*Michael J. McAllister* and *Andrew P. Saulitis* of counsel), for respondent.

OPINION OF THE COURT

LAZER, J.

The primary focus of these appeals is application of the Statute of Limitations when the same conduct or transaction produces separate causes of action sounding in tort and in contract. Asserting that the "essence" of the instant action is tort, defendants have unsuccessfully sought its dismissal on the basis of untimeliness and other alleged defects and they now seek corrective relief from us. Resolution of the issues implicates the recent and portentous holding of the Court of Appeals in *Video Corp. of Amer. v Flatto Assoc.* (58 NY2d 1026).

I

From 1968 through 1975, the Bank of Babylon (the Bank) purchased and retained $120,000 worth of bonds at the direction and for the account of plaintiff. When return of the bonds was requested by plaintiff in November, 1976, Edward Kozlowski, the president of the Bank, admitted that he had utilized the bonds for his own purposes and that they would not be returned. When plaintiff, who was a director of the Bank, reported this state of facts to the Bank's counsel, he was advised not to press any claim because to do so would damage the Bank and ruin Kozlowski's career. Kozlowski subsequently requested time to make restitution, furnished plaintiff with a written admission of liability, and provided some small cash payments for a few months. At a later point — between July and October, 1977 — Kozlowski informed plaintiff that he would be unable to return the bonds or their proceeds.

In October of 1977, upon notifying the Bank counsel of his intention to report the embezzlement, plaintiff was told that Kozlowski had threatened to kill him if suit was brought. These threats to plaintiff's life were repeated to him by the lawyer in September, 1978 and December, 1980. Despite his earlier declaration of inability to pay, in January of 1980 Kozlowski renewed his promise of full restitution, paid the plaintiff $300 at that time, and returned $10,000 worth of bonds the following month. In the absence of further payments, however, plaintiff finally reported the embezzlement directly to the Bank in February of 1981, but his demand for restitution was rejected. By May of 1981, when plaintiff sued Kozlowski, the Bank and its parent company, Irving Bank Corporation, four and one-half years had elapsed since return of the bonds had first been requested. After commencement of the action, Kozlowski returned an additional $30,000 worth of bonds and pleaded guilty to grand larceny in the third degree. Still unaccounted for are $80,000 worth of bonds.

## II

Plaintiff's 10 causes of action include claims for conversion, money had and received, breach of fiduciary duty, breach of contract, negligence and fraud. At the outset, we conclude that the complaint against the Irving Bank should be dismissed. The Irving Bank was not a party to any contract with plaintiff and it may not be held liable for the torts of its subsidiary because the complaint fails to allege that it exercised complete domination and control over the subsidiary (*Billy v Consolidated Mach. Tool Corp.*, 51 NY2d 152; *Margolin v Sonesta Int. Hotels Corp.*, 85 AD2d 548). Subsequent references to the defendants in this opinion do not include the Irving Bank.

The crux of defendants' challenge to timeliness is that the essence of the action is tort and since more than three years elapsed between accrual of the tort claims and the institution of suit, the complaint must be dismissed. We reject the Bank's assertion that the action accrued when the bonds were converted because where there is a delivery

of personal property "not to be returned specifically or in kind at a fixed time or upon a fixed contingency" an action for conversion does not accrue until there is a demand for return of the property (see CPLR 206, subd [a], par 2; see, also, 1 Weinstein-Korn-Miller, NY Civ Prac, par 206.02). Here, the bonds were not to be returned at a set time and accrual must therefore be computed from the time of demand in November, 1976, shortly after plaintiff learned of the wrong. Since the action was commenced four and one-half years after its causes of action accrued, we must decide whether it is the three-year Statute of Limitations governing conversion, negligence and breach of fiduciary duty (see CPLR 214, subds 2, 3; *Tobias v Celler,* 37 NYS2d 399, affd 265 App Div 1065; *Dinerman v Sutton,* 45 Misc 2d 791) or the six-year statute governing contractual and quasi-contractual claims (see CPLR 213, subd 2) that applies. Plaintiff argues, nonetheless, that this question need not be reached because Kozlowski's requests for delay, promises of restitution, threats of death, together with his admission of liability, estop defendants from raising time bar as a defense. Only one of these contentions give us pause.

■ While it is quite questionable whether mere oral promises can form the basis of estoppel in this State (see *Scheuer v Scheuer,* 308 NY 447; *Shapley v Abbott,* 42 NY 443), plaintiff relies on cases where estoppel was invoked against insurers who promised settlement and implied that the commencement of an action was unnecessary (see, e.g., *Dupuis v Van Natten,* 61 AD2d 293; *Croop v Odette,* 29 Misc 2d 606, affd 14 AD2d 724; *Kyle v Village of Catskill,* 81 Misc 2d 1035; *Huggins v Associated Hosp. Serv. of N. Y.,* 53 Misc 2d 160; *Hover v Claverack Grange No. 934,* 46 Misc 2d 113). There is no need to resolve that aspect of the estoppel question, however, because the instant promises were repudiated prior to the expiration of the Statute of Limitations while the plaintiff still had ample time to commence a tort action (see *Simcuski v Saeli,* 44 NY2d 442; see, also, *509 Sixth Ave. Corp. v New York City Tr. Auth., Auth.,* 24 AD2d 975; Ann., 44 ALR3d 760, 768-774; Ann., 43 ALR3d 429, 453-454). When Kozlowski repudi-

ated his earlier promises by telling plaintiff in the latter half of 1977 that he would neither return the bonds nor pay for them, not even one year had elapsed since the cause of action for conversion had accrued. Plaintiff's failure to bring suit within the two years remaining under the tort Statute of Limitations constituted a failure to exercise due diligence as a matter of law and estoppel based on the promises of payment is unavailable to defeat the defense of the Statute of Limitations (see *509 Sixth Ave. Corp. v New York City Tr. Auth., supra* [6 months remaining]; *Ball v Utica Mut. Ins. Co. of Utica,* 60 Misc 2d 459 [10 months]; *Di Biase v A & D, Inc.,* 351 A2d 865 [Del] [2 years]; *Sabath v Mansfield,* 60 Ill App 3d 1008 [8 months]; *Ford v Rogovin,* 289 Mass 549 [10 months]; *Huhtala v Travelers Ins. Co.,* 65 Mich App 581 [2 years]; *Troutman v Southern Ry. Co.,* 296 F Supp 963 [1 year]; but see *Arbutina v Bahuleyan,* 75 AD2d 84 [2 months]; *Redington v Hartford Acc. & Ind. Co.,* 463 F Supp 83.[7 months]). Nor does Kozlowski's alleged renewal of his promise of full restitution in January, 1980 resuscitate the claim of estoppel, for by then the tort statute had run and renewal of the promises could not create a new estoppel or revive one that derived from earlier conduct (see 1 Williston [3d ed], Contracts, § 186; 1A Corbin, Contracts, § 221).

We turn, then, to the more difficult aspect of the estoppel question — the effect of the death threats that were never repudiated and which continued for the two years following Kozlowski's repudiation of his promises of restitution. It is well settled that duress and undue influence are grounds for rescission of a contract where the complaining party is compelled to agree to the contract by means of a wrongful threat which precludes the exercise of free will (*Muller Constr. Co. v New York Tel. Co.,* 40 NY2d 955; *Austin Instrument v Loral Corp.,* 29 NY2d 124). Furthermore, when duress is part of the cause of action alleged, the limitations period is tolled until the termination of the duress (*Pacchiana v Pacchiana,* 94 AD2d 721; *Kamenitsky v Corcoran,* 97 Misc 384, revd on other grounds 177 App Div 605; Developments in the Law: Statutes of Limitations, 63 Harv L Rev 1177, 1219; Duress or undue influence as tolling or suspending Statute of Limitations, Ann., 121 ALR 1294). Although such duress does not prevent the

accrual of the cause of action, it tolls the running of the limitations statute because the offensive conduct is regarded as a continuous wrong (see, e.g., *Clary v Stack Steel & Supply Co.*, 611 P2d 80 [Alaska]; *Wyatt v Union Mtge. Co.*, 157 Cal Rptr 392; *Whatley v National Bank of Commerce*, 555 SW2d 500 [Tex]).

Where the underlying action is unrelated to duress, however, the Statute of Limitations is not tolled by duress (see Ann., 121 ALR 1294, 1297). The Court of Appeals so held in *Piper v Hoard* (107 NY 67, 71 [1887]), declaring that "the statute begins to run irrespective of * * * whether [the injured party] has enough of courage and independence to resist a hostile influence, and assert his rights or not." Not only has *Piper* never been overturned, but more recently the First Department has decided that a defendant's alleged threats of physical violence and loss of employment against the plaintiff "are insufficient to estop defendant * * * from urging the defense of Statute of Limitations" (*Stadtman v Cambere*, 73 AD2d 501). Neither case provides any reasoning.

While other jurisdictions have suggested or assumed the possibility for the purpose of argument that duress might toll the limitations period for causes of action not based on duress, the ultimate resolution in each case was to reject duress as a toll on the facts presented (see, e.g., *Jastrzebski v City of New York*, 423 F Supp 669; *Davis v Wilson*, 349 F Supp 905, affd 471 F2d 653; *Miller Motors v Ford Motor Co.*, 149 F Supp 790, affd 252 F2d 441; *Philco Corp. v Radio Corp. of Amer.*, 186 F Supp 155; *Babco Inds. v New England Merchants Nat. Bank*, 6 Mass App 929). Whether reluctance to recognize duress as a toll lies in the undesirability of a rule that turns on the reasonableness of reliance upon threats of physical or economic harm, the ease of fabrication of such threats (see *Jastrzebski v City of New York, supra,* p 674), or simply in the judicial reluctance to create an entirely new defense to the Statute of Limitations (see *Piper v Hoard, supra*), we do not assay to answer, for we are not inclined in this case to attempt overthrow of the old rule. Although *stare decisis* is not intended to effect a " 'petrifying rigidity' " (*Bing v Thunig*, 2 NY2d 656, 667), the substantive result we otherwise arrive at militates

against use of this litigation to expand existing rules of estoppel. Thus, we decline the proffered opportunity to seek to relegate *Piper* to the ages or to announce that in this Department, duress independent of the grounds stated in a cause of action, will toll the Statute of Limitations.

### III

We arrive, then, at the substance of the timeliness issues. The Bank contends that the essence of the action is conversion and that under the three-year tort limitation period (see CPLR 214, subd 3) the action must be dismissed as untimely. Plaintiff responds that the essence of the action rule does not apply where the claim is for damages to pecuniary interest rather than personal injury, and therefore his action was timely under the six-year contract statute.

Fundamental to the difference between tort and contract actions is the nature of the interests protected. Tort actions were created to protect the interests in freedom from various kinds of harm and are based primarily on social policy. Contract actions derive, of course, from agreements entered into between parties. Tort and contract concepts are not wholly discrete, however, and the same facts may give rise to liability under both (*Victorson v Bock Laundry Mach. Co.,* 37 NY2d 395). "Between actions plainly *ex contractu* and those as clearly *ex delicto* there exists what has been termed a border-land, where the lines of distinction are shadowy and obscure, and the tort and the contract so approach each other, and become so nearly coincident as to make their practical separation somewhat difficult." (*Rich v New York Cent. & Hudson Riv. R. R. Co.,* 87 NY 382, 390.) Where tort and contract theories are both available to a plaintiff, the critical question often has been whether the plaintiff is entitled to the more favorable limitation period or whether the court must itself decide on the particular facts pleaded that the "gravamen" of the action is one or the other (see, generally, Prosser, Border-land of Tort and Contract, in Prosser, Selected Topics on the Law of Torts; Thornton, The Elastic Concept of Tort and Contract as Applied by the Courts of New York, 14 Brooklyn L Rev 196; Contorts: Patrolling the Borderland of

Contract and Tort in Legal Malpractice Actions, 22 BC L Rev 545).

In resolving conflicts between the tort and contract limitations periods, the judiciary historically has looked toward the "essence of the action", a rule primarily applied to personal injury lawsuits (see, e.g., *Schmidt v Merchants Desp. Transp. Co.,* 270 NY 287; *Webber v Herkimer & Mohawk St. R.R. Co.,* 109 NY 311; *Loehr v East Side Omnibus Corp.,* 259 App Div 200, affd 287 NY 670), but sometimes applied to pecuniary interest cases as well (compare *Alyssa Originals v Finkelstein,* 22 AD2d 701, affd 24 NY2d 976; *Carr v Lipshie,* 8 AD2d 330, affd 9 NY2d 983, with *Dentists' Supply Co. of N.Y. v Cornelius,* 281 App Div 306, affd 306 NY 624; *Board of Educ. v Mancuso Bros.,* 25 Misc 2d 122). In recent times, however, the Court of Appeals has disavowed blanket application of the essence of the action rule beyond personal injury actions and recognized that different policy considerations are involved in actions for damages to property or pecuniary interests (*Sears, Roebuck & Co. v Enco Assoc.,* 43 NY2d 389; *Matter of Paver & Wildfoerster* [*Catholic High School Assn.*], 38 NY2d 669). In the most notable case, a firm of architects contracted with Sears, Roebuck to design plans and supervise the construction of parking ramps at one of its stores. Sears, Roebuck ultimately sued the architects for negligence and breach of contract based on the failure to use professional care. With timeliness the issue, the Court of Appeals applied the six-year statute and reinstated the tort and contract causes of action while limiting proof on the issues of damages to the contract measure (*Sears, Roebuck & Co. v Enco Assoc., supra*). The court held (p 396) that when damage to property or pecuniary interests is involved, the six-year statute governs regardless of how the theory of liability is described, as long as the asserted liability "had its genesis in the contractual relationship of the parties."

The significance and meaning of *Sears* (*supra*) were recently illuminated in a case that has not yet attracted the attention it merits, for the Court of Appeals now has explicitly declared that an action for failure to exercise due care in the performance of a contract, where the plaintiff

seeks damages for injury to property or pecuniary interests, is governed by the six-year Statute of Limitations (see *Video Corp. of Amer. v Flatto Assoc.*, 58 NY2d 1026, *supra*). Since *Video Corp.* involved no written contract and dealt with the failure of an insurance broker to obtain adequate insurance coverage, the holding was an apparent response to the restrictive manner in which three departments of the Appellate Division interpreted *Sears* when confronted with malpractice claims against accountants, lawyers and insurance brokers. All three departments had viewed *Sears* as solely applicable to cases involving detailed written agreements (see *Brainard v Brown,* 91 AD2d 287; *Video Corp. of Amer. v Flatto Assoc.*, 85 AD2d 448; *Adler & Topal v Exclusive Envelope Corp.*, 84 AD2d 365). In rejecting this restriction, the Court of Appeals in *Video Corp.* reached out to specifically overrule *Gilbert Props. v Millstein* (33 NY2d 857), a malpractice action against an attorney, and *Adler & Topal v Exclusive Envelope Corp. (supra),* a case that was not even before the court, involving an informal contract for accounting services.

Although the Court of Appeals cited Prosser in concluding that different policy considerations pertain where damages to property or pecuniary interests are involved as opposed to personal injuries (*Sears, Roebuck & Co. v Enco Assoc.*, 43 NY2d 389, 395, *supra; Matter of Paver & Wildfoerster [Catholic High School Assn.]*, 38 NY2d 669, 675, *supra*), the considerations were not particularized and further elucidation was not provided by the Prosser citation (see Prosser, Torts [4th ed], § 92, p 621). We perceive one of the considerations as the recognition that determination of the essence of an action where pecuniary interests are involved is difficult almost to the point of requiring arbitrary resolution (see *Rich v New York Cent. & Hudson Riv. R. R. Co.*, 87 NY 382, *supra; Edwards v State of New York,* 95 Misc 2d 516, 520; 14 Brooklyn L Rev 196). *Video Corp. (supra)* seems to draw a bright line which will ease selection of limitations periods for property or pecuniary interest cases, a process previously described as a "snarl of utter confusion" (see Prosser, Borderland of Tort and Contract, in Prosser, Selected Topics on the Law of Torts, p 434). The *Video Corp.* result is also consonant with Siegel's

observation that "it does seem wrong to restrict a plaintiff, injured in effect by two wrongs, to the shorter of their time periods" (Siegel, NY Practice, § 37, p 40), for a wrongdoer should not be permitted to allege his own wrong for the purpose of defeating an action on the basis of the Statute of Limitations (see *Ganley v Troy City Nat. Bank,* 98 NY 487, 494; Angell, Limitations [5th ed], § 72; 1 Wood, Limitation of Actions [3d ed], § 57b). Those who seek recompense for injury to property or pecuniary interests can now select a remedy less likely to be frustrated by time restrictions, provided they are willing to limit themselves to contractual damages.

With this jurisprudential backdrop, we proceed to the selection of the limitations period that governs the current claims. The complaint sufficiently alleges the creation of a bailment contract with the Bank since the plaintiff was entitled to the return of the identical bonds deposited with the Bank for safekeeping (see *Genesee Wesleyan Seminary v United States Fid. & Guar. Co.,* 247 NY 52; 9 NY Jur 2d, Banks & Financial Institutions, §§ 260, 261). As bailee, the Bank was required, of course, to exercise reasonable care so as to prevent loss of or damage to the property (see *I.C.C. Metals v Municipal Warehouse Co.,* 50 NY2d 657, 662). Since the claimed damage is to property or pecuniary interests and the asserted liability not only relates in part to an alleged failure to use due care, but also "had its genesis in the contractual relationship of the parties" (*Sears, Roebuck & Co. v Enco Assoc., supra,* p 396), application of the six-year Statute of Limitations to the claims against the Bank is mandated by *Sears* and *Video Corp.* (*supra*). Thus, the complaint against the Bank is not barred by the Statute of Limitations. While plaintiff is limited to the contract measure of damages, the difference between tort and contract damages in this case is hardly discernible since both standards would permit recovery of the value of the bonds plus accrued interest. There may be a real distinction as far as punitive damages are concerned since they are rarely available for mere breach of contract (*Garrity v Lyle Stuart, Inc.,* 40 NY2d 354, 358; *J.G.S., Inc. v Lifetime Cutlery Corp.,* 87 AD2d 810), but that is an issue we need not decide at this juncture.

While Kozlowski was not a party to the bailment contract, the six-year Statute of Limitations applies to the causes against him based on plaintiff's claim of unjust enrichment. It is well settled that a plaintiff may elect to waive a conversion claim and sue in assumpsit or quasi contract (*Hechter v New York Life Ins. Co.*, 46 NY2d 34; *Dentists' Supply Co. of N. Y. v Cornelius*, 281 App Div 306, affd 306 NY 624, *supra; Terry v Munger*, 121 NY 161; Prosser, Selected Topics on the Law of Torts, p 420). This election proceeds upon the theory that the plaintiff is deemed to ratify the conversion and proceed upon an implied contract of sale of the converted property to the wrongdoer (*Dentists' Supply Co. of N. Y. v Cornelius, supra*, p 307; *Terry v Munger, supra*, p 165). There is no election as of yet, since inconsistent theories may be advanced in pleadings (see CPLR 3002, 3014; *Cohn v Lionel Corp.*, 21 NY2d 559), with the choice usually not required to be made until the trial at a time within the discretion of the Trial Judge (*Lukaris v Harrison Vending Systems*, 28 AD2d 1019; Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3002:14, pp 533-534).

IV

█ Finally, we must dispose of two other challenges to the complaint based on the asserted insufficiency of certain causes of action. We agree with the Bank that no action for unjust enrichment lies against it because it was not enriched by Kozlowski's embezzlement. A quasi-contractual obligation is one imposed by law when the acts of the parties or others have placed in the possession of the defendant money or its equivalent "under such circumstances that in equity and good conscience he ought not to retain it" (*Miller v Schloss*, 218 NY 400, 407; see, also, *Bradkin v Leverton*, 26 NY2d 192, 197). Although performance of any wrongful act by the defendant is not required (*Simonds v Simonds*, 45 NY2d 233, 242), there must be unjust enrichment as between the parties to the transaction (*McGrath v Hilding*, 41 NY2d 625; Restatement, Restitution, § 1). The enrichment may either be the receipt of money or its equivalent (*Miller v Schloss, supra*) or by being saved from expenses or loss (*3105 Grand Corp. v City of New York*, 288 NY 178). Since the complaint alleges that

Kozlowski converted the bonds "to his own use and benefit", the Bank was not enriched by the conversion (see *Credit Alliance Corp. v Sheridan Theatre Co.,* 241 NY 216; 50 NY Jur, Restitution & Implied Contracts, § 40). While a principal may be liable in tort for the actions of its embezzling agent, it cannot be held for unjust enrichment for the simple reason that it has not been enriched. Accordingly, the second cause of action for money had and received should be dismissed as to the Bank.

In addition, the seventh cause of action for fraud should be dismissed. It alleges that Kozlowski and the Bank falsely misrepresented to the plaintiff that the bonds would be returned, thereby causing him loss when the Statute of Limitations expired. If the failure to commence an action before the expiration of the Statute of Limitations is due to fraud practiced upon the plaintiff, a cause of action will lie for the loss sustained (*Brick v Cohen-Hall-Marx Co.,* 276 NY 259, 264; *Dupuis v Van Natten,* 61 AD2d 293, 295; *Alexander v Anderson,* 48 NYS2d 102, affd 267 App Div 984). Here, however, the misrepresentations caused plaintiff no loss since he had two years to sue in tort after Kozlowski repudiated the fraud.

Accordingly, the order appealed from should be modified by dismissing the complaint against the Irving Bank, the second and seventh causes of action against the Bank of Babylon, and the seventh cause of action against Kozlowski. As so modified, the order should be affirmed.

DAMIANI, J. P., MANGANO and BROWN, JJ., concur.

Order of the Supreme Court, Suffolk County, dated March 29, 1982 modified, on the law, and defendants' motions granted to the extent that the complaint is dismissed against defendant Irving Bank, the second and seventh causes of action are dismissed as against defendant Bank of Babylon, and the seventh cause of action is dismissed as against defendant Kozlowski, and the motions are otherwise denied. As so modified, order affirmed, without costs or disbursements.