OPINION OF THE COURT
Edward H. Lehner, J.
Plaintiff Frank Management, Inc., is the manager of singer and composer Billy Joel. Defendant Elizabeth Weber is Mr. Joel’s former wife and former manager as well as the sister of Frank Weber, plaintiff’s president.
The complaint, as amended, seeks $285,577.45 in damages for an alleged breach of contract as a result of defendant’s failure to pay for management and consulting services rendered by plaintiff pursuant to an agreement between the parties.
The answer admits only the existence of the agreement and sets forth a general denial and 12 affirmative defenses, including several sounding in breach of contract and several for breach of fiduciary duties, including conflicts of interest and self-dealing with respect to certain investment activities. By counterclaim, defendant seeks damages of $7,000,000 in losses and other damages allegedly sustained by her as a result of plaintiff’s claimed failure to perform its obligations under the Artist Royalty and Property Management Agreement between the parties (the Management Agreement), and the breach of fiduciary duties. Among the affirmative defenses set forth in plaintiff’s reply are that the counterclaim is barred by the Statute of Limitations, the express terms of the Management Agreement, waiver and estoppel.
Plaintiff moves to dismiss, in the alternative, those portions of the counterclaim which seek damages for acts occurring before (i) January 1, 1984 (the effective date of the Management Agreement); (ii) March 18, 1984, three years prior to interposition of the counterclaim; (iii) March 18, 1981, six years prior to interposition of the counterclaims; or (iv) October 14, 1980, the date plaintiff was incorporated.
It is defendant’s position that the six-year Statute of Limitations governing contractual causes of action is applicable, and not the three-year time period, and the applicable period has been tolled by plaintiff’s continuing representation as defendant’s manager.
In Paver & Wildfoerster v Catholic High School Assn. (38 *997 NY2d 669 [1976]), a case in which a claim for the improper performance of an architect’s contractual obligation was cognizable in either contract or tort, the court departed from the previous rule, which had determined the appropriate Statute of Limitations by looking to the " 'reality’ ” or the " 'essence’ ” of the action (38 NY2d, at 674), and ruled that in actions for damages to property or pecuniary interests only "the period of limitations to be applied should, with exceptions not to be proliferated, depend upon the form of the remedy” (supra, at 676). This break from the former method of analysis has not been an easy one, with courts occasionally lapsing into the old " 'reality and essence of the cause of action’ ” analysis. (See, e.g., Trott v Merit Dept. Store, 106 AD2d 158, 161 [1st Dept 1985] [Sandier, J., concurring].)
The following year the court in Sears, Roebuck & Co. v Eneo Assocs. (43 NY2d 389 [1977]) reaffirmed its holding in Paver (supra, at 395), but added two new wrinkles. First, it was held that since the action had been timely commenced under the six-year Statute of Limitations applicable to contract actions, but not within three years after accrual as required for tort actions, plaintiff was limited to damages for contract liability (supra, at 396). Had the action been commenced within the three-year period applicable to tort claims, plaintiff would have been free to sue in either contract or tort and recover appropriate damages. (See also, Video Corp. v Flatto Assocs., 85 AD2d 448, 457 [1st Dept 1982] [Sandier, J., dissenting in part], mod 58 NY2d 1026 [1983]; Baratta v Kozlowski, 94 AD2d 454 [2d Dept 1983].)
Second, although Paver (supra) had purported to look only to the remedy and not to the theory of recovery, the court in Sears (supra, at 396) relied upon the fact that the liability alleged in the complaint "had its genesis in the contractual relationship of the parties.” (See, e.g., Matter of Bonar v Shaffer, 140 AD2d 153, 155 [1st Dept 1988]; King Cullen Grocery Co. v Long Is. R. R. Co., 112 AD2d 194 [2d Dept 1985]; Banks v DeMillo, 145 AD2d 903 [4th Dept 1988].)
In Baratta v Kozlowski (supra, at 456) plaintiff’s causes of action included a claim for breach of fiduciary duty. The court framed the issue in the case as "whether it is the three-year Statute of Limitations governing conversion, negligence and breach of fiduciary duty * * * or the six-year statute governing contractual and quasi-contractual claims * * * that applies” (supra, at 457), referring to the same cases relied upon by plaintiff herein in support of its contention that the three- *998 year statute applies in the case at bar (Tobias v Celler, 37 NYS2d 399 [Sup Ct, Kings County 1942], affd 265 App Div 1065 [2d Dept 1943]; Dinerman v Sutton, 45 Misc 2d 791 [Sup Ct, Queens County 1965]). However, contrary to plaintiff’s assertion herein, the court in Baratta merely cited those cases to illustrate an alternative it faced, and did not approve of them.
Although the court in Baratta (supra) did not state specifically that the cause of action for breach of fiduciary duty was subject to the six-year limitations period, it followed the Paver-Sears-Video trilogy in holding that since the asserted liability " 'had its genesis in the contractual relationship of the parties’ ” (Baratta v Kozlowski, supra, at 461, quoting Sears, Roebuck & Co. v Eneo Assocs., 43 NY2d 389, 396, supra) the claim was not barred. (See also, Wilson v Bristol-Myers Co., 61 AD2d 965 [1st Dept 1978] [decided only three months after Sears, and not citing it].)
Recently, in Loengard v Santa Fe Indus. (70 NY2d 262 [1987]), a proceeding to review questions certified to the New York State Court of Appeals by order of the United States Court of Appeals for the Second Circuit, it was answered that the six-year Statute of Limitations of CPLR 213 (1) or (2) governs a claim for unjust enrichment resulting from a breach of fiduciary obligation. The claim in that case was for the majority shareholders’ alleged breach of the fiduciary obligation owed by them to the minority in forcing the minority to sell their shares in a freeze-out merger at a substantially undervalued price. The court’s analysis followed the reasoning in Paver (38 NY2d 669, supra) and Sears (supra), concluding that plaintiff’s remedy was equitable in nature and that its claim was therefore governed by the six-year Statute of Limitations. There was therefore no need to determine whether the six-year period should apply because the "genesis” of the claim was contractual.
Significantly, the cases relied upon by plaintiff herein for the proposition that the three-year limitations period for injury to property applies to the alleged breach of fiduciary duties were apparently discussed in the briefs in Loengard (see, supra, 70 NY2d, at 264 [point IV]), and were relied upon by the District Court in holding that the three-year limitations period governs (Loengard v Santa Fe Indus., 573 F Supp 1355, 1359-1360 [SD NY 1983]), but were not mentioned in the decision by our State’s Court of Appeals. It would thus appear that the decisions in Tobias v Celler (37 NYS2d 399, supra) *999 and Dinerman v Sutton (45 Misc 2d 791, supra), relied upon by plaintiff herein, are products of a bygone era in our jurisprudence, now relegated to the status of mere historical curiosities in light of the changes wrought by Paver (supra), Sears (supra) and Video Corp. (85 AD2d 448, supra). (See, Eisenberg, The Nature of the Common Law, at 135.)
Although the court in Loengard (supra) applied the six-year limitations period where the remedy sought was equitable, while here the claim is for damages only, the six-year period has been applied where damages alone have been sought. (Fava v Kaufman, 124 AD2d 42, 44 [3d Dept 1987]; Zola v Gordon, 685 F Supp 354, 374 [SD NY 1988]; cf., Dolmetta v Uintah Natl. Corp., 712 F2d 15, 19 [2d Cir 1983] [constructive trust remedy].) Here, the six-year period is applicable, as it is claimed that the fiduciary obligation allegedly breached in this case had its genesis in a contractual relationship, expressed or implied, between the parties.
Finally, the mere fact that a breach of fiduciary duty is actionable in tort (Apple Records v Capitol Records, 137 AD2d 50, 55-57 [1st Dept 1988]) does not preclude a cause of action in contract as well and "if alternative theories can arguably support a claim, and any one of them carries a limitation period which would keep the claim alive, the claim should be sustained as timely” (Matter of Allen [First Wallstreet Settlement Corp.], 130 AD2d 824, 826 [3d Dept 1987]).
The six-year period begins to run from the date of breach. (Benson v Boston Old Colony Ins. Co., 134 AD2d 214, 215 [1st Dept 1987]; Bernstein v La Rue, 120 AD2d 476, 477 [2d Dept 1986], lv dismissed 70 NY2d 746 [1987].) The argument that defendant is entitled to a discovery accrual is without merit, as no case or statute provides for such accrual as, for example, in cases of actual fraud (see, e.g., CPLR 206 [b]; 213 [8]; 214 [7]). Notably, no discovery accrual has been provided in the case of constructive fraud (CPLR 213 [1]) which most closely resembles the breach of fiduciary obligation alleged herein. (See, 1 Weinstein-Korn-Miller, NY Civ Prac H 203.35, at 2-118.33.)
Nor should defendant benefit from the "continuous representation” doctrine to toll the application of the limitations period, thereby rendering viable claims for alleged wrongs occurring more than six years prior to interposition of her counterclaims.
The continuous treatment doctrine was first enunciated *1000 with respect to physician malpractice in Borgia v City of New York (12 NY2d 151 [1962]) and has since been extended to claims against other professionals where continuous representation is involved. Thus, the doctrine has been applied to toll claims against attorneys (Greene v Greene, 56 NY2d 86 [1982]; Glamm v Allen, 57 NY2d 87 [1982]; Levine v Lumbermen’s Mut. Cos. Co., 147 AD2d 423 [1st Dept 1989]; Antoniu v Ahearn, 134 AD2d 151 [1st Dept 1987]), dentists (Wehle v Giovanniello, 137 AD2d 680 [2d Dept 1988]; Landau v Salzman, 129 AD2d 774 [2d Dept 1987]), architects (Board of Educ. v Thompson Constr. Corp., 111 AD2d 497 [3d Dept 1985]), accountants (Wilkin v Dana R. Pickup & Co., 74 Misc 2d 1025 [Sup Ct, Allegany County 1973]; Goulding v Solomon, 123 Misc 2d 954 [Civ Ct, Bronx County 1984]), surveyors (Tool v Boutelle, 91 Misc 2d 464 [Sup Ct, Albany County 1977]) and executors (McCabe v RMJ Sec. Corp., NYLJ, Oct. 19, 1988, at 21, col 6 [Sup Ct, NY County]).
On the other hand, courts have declined to extend the doctrine with respect to claims against escrow agents (Lazzaro v Kelly, 57 NY2d 630, 632 [1982]) and, perhaps, insurance brokers (Video Corp. v Flatto Assocs., 85 AD2d 448, 456 [1st Dept 1982], supra, mod on other grounds 58 NY2d 1026 [1983]; Flora’s Card Shop v Krantz & Co., 111 Misc 2d 907 [Sup Ct, NY County 1981], affd 91 AD2d 938 [1st Dept 1983]; contra, Ben Heller, Inc. v St. Paul Fire & Mar. Ins. Co., 107 Misc 2d 687 [Sup Ct, NY County 1981]; but see, National Life Ins. Co. v Hall & Co., 67 NY2d 1021, 1023 [1986], in which application of the continuous representation doctrine to a claim against an insurance broker was denied because the "case does not involve an uninterrupted course of reliance and services related to the particular duty breached”, from which the inference could be drawn that the doctrine would otherwise apply).
This court need not determine whether the continuous representation exception should be extended to claims against the profession of business managers generally, for the doctrine is not applicable in this case for two reasons.
First, one of the rationales for the continuous treatment exception is the assumption that the trust and confidence which marks the professional relationship puts the client at a disadvantage to question the professional’s techniques and gives the client the right to rely upon the professional’s skill without the necessity of interrupting a continuous course of representation by instituting suit. (See, Barrella v Richmond Mem. Hosp., 88 AD2d 379, 383 [2d Dept 1982].) However, the *1001 presence of such trust, confidence and reliance and the disparity in professional knowledge ordinarily present in such situations are at a minimum in this case. The papers submitted on these motions indicate that defendant repeatedly questioned plaintiff with regard to particular business judgments and at times proposed alternative courses of action. Moreover, defendant was formerly Billy Joel’s manager, far from unsophisticated in business, and was herself responsible for placing Weber in his management role.
Second, representation is not " 'continuous’ ” if the services rendered are discrete and complete. (Barrella v Richmond Mem. Hosp., supra, at 384.) Here, the wrongs alleged consist of a number of separate acts, investment decisions undertaken independently of one another. The discrete acts complained of herein thus differ markedly from the situation in Flaum v Birnbaum (120 AD2d 183, 197 [4th Dept 1986]), upon which defendant’s argument rests, wherein a "continuous scheme of self-dealing” depended for its success upon one final culminating act by the wrongdoer, and consisted of a series of apparently innocent acts.
Furthermore, Flaum v Birnbaum (supra) was concerned, not with a toll of the Statute of Limitations under the continuous representation doctrine, wherein the time in which to bring an action for harm that has previously accrued is stayed (McDermott v Torre, 56 NY2d 399, 405 [1982]), but with deferral of the accrual date of the cause of action. It was the culmination of the scheme in Flaum which first resulted in the harm to plaintiffs, and thus constituted the point at which the cause of action accrued (supra, 120 AD2d, at 197).
Since the original counterclaim in this action was served on March 18, 1987, claims in the amended counterclaim for acts occurring up to six years prior thereto are timely, and leave to amend to include such claims is granted. The motion to dismiss is granted to the extent only of dismissing claims predicated upon acts occurring prior to March 18,1981.