John CATSIMATIDIS, Farhad Azima and John Lagerquist, d/b/a ACL Partners, Plaintiffs,

v.

INNOVATIVE TRAVEL GROUP, INC. a/k/a ITG, Inc., Arthur Toll and Roy Goldberg, Defendants.

No. 84 Civ. 5697 (SWK).

United States District Court, S.D. New York.

Dec. 29, 1986.

Lowenthal, Landau, Fischer & Ziegler, P.C. by Lawrence L. Ginsburg, Richard A. Sarner, New York City, for plaintiffs.

Esanu Katsky Korins & Siger by Richard Levy, Jr., New York City, for defendant Arthur Toll.

KRAM, District Judge.

Subject matter jurisdiction in this case is founded on diversity of citizenship under 28 U.S.C. § 1332. Plaintiffs allege breach of contract, breach of an alleged oral guaranty on the contract and fraudulent inducement to contract. Defendant Arthur Toll ("Toll") moves to dismiss the complaint as against him on grounds of improper venue, Fed.R.Civ.P. 12(b)(3), and lack of personal jurisdiction, Fed.R.Civ.P. 12(b)(2). For the reasons set forth below, defendant's motion is denied.

### FACTS

Toll is a citizen of Pennsylvania and chairman and chief executive officer of American Airways, Inc. ("AIA"),[1] a Delaware corporation with its principal offices

---

1. AIA is not a party to this action. AIA filed a petition in bankruptcy on July 21, 1984, before this action was commenced.

in Pennsylvania. AIA operated scheduled and chartered aircraft services. Plaintiffs allege that they entered into an agreement—partly written and partly oral—with AIA and defendants Innovative Travel Group, Inc. ("ITG"), a New Jersey corporation, Roy Goldberg ("Goldberg") and Toll. Plaintiffs allege that, pursuant to this agreement, they agreed to purchase validated AIA ticket stock from AIA and ITG at an agreed cash price of $500,000, that, in lieu of delivering the ticket stock to plaintiffs, defendants could elect to sell the stock for plaintiffs' account and pay to plaintiffs the proceeds of all such sales, and that Toll would promptly pay any deficiency if defendants failed to perform. Plaintiffs also allege that Toll represented to plaintiff John Catsimatidis ("Catsimatidis") that he was acting both in his individual capacity and in his capacity as AIA's chief executive officer. Toll, on the other hand, points to a June 6, 1984 written agreement between plaintiffs and defendants and claims that this written agreement, which encompasses the stock sale but not Toll's guaranty, is the total agreement and that he was acting solely in his corporate capacity.

Plaintiffs claim that Toll placed several telephone calls to Catsimatidis in New York regarding the potential agreement and that the initial negotiation meeting was held between Toll and plaintiffs in New York on June 4, 1984. Toll does not dispute that this New York meeting occurred but claims that it involved negotiation of a totally unrelated agreement. All other aspects of the agreement cited by Toll, including negotiation, preparation, execution and delivery by plaintiffs of the initial payment required by the agreement occurred in Pennsylvania. Plaintiffs' initial payment took the form of two checks drawn on Catsimatidis' New York bank.

Plaintiffs allege that defendants have breached their agreement with plaintiffs by failing and refusing to deliver to plaintiffs either the validated ticket stock of AIA or the cash equivalent of the stock, that Toll breached his oral guarantee, and that Toll and Goldberg induced plaintiffs to contract by means of material and false representations. Plaintiffs initiated this action for damages on November 30, 1984.

## DISCUSSION

### In Personam Jurisdiction

Toll is not a New York domiciliary. Nonetheless, plaintiffs argue that jurisdiction over Toll is proper as it is conferred by the New York long arm statute, which provides for jurisdiction over a nondomiciliary who "transacts any business" in New York. N.Y.Civ.Prac.Law § 302(a)(1) (McKinney Supp.1987). Plaintiffs contend that, because Toll made phone calls to New York and came to New York to initiate negotiations on the contract in both his individual capacity and in his role as chairman and chief executive officer of AIA, he is personally amenable to suit in New York.

The Second Circuit has stated that a district court has considerable leeway in deciding a pretrial motion to dismiss for lack of personal jurisdiction, and that where the court determines the motion without an evidentiary hearing, the plaintiffs need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials.[2] *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981) (citing *Visual Sciences, Inc. v. Integrated Communications, Inc.*, 660 F.2d 56 (2d Cir.1981)). Those documents are construed in the light most favorable to the plaintiffs and all doubts are to be resolved in plaintiffs' favor. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985). As a result, this Court will treat the plaintiffs' complaint and the Catsimatidis affidavit as true for the purposes of deciding this motion. *CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 363 (2d Cir.1986); *Interface Biomedical*

---

**2.** Where the motion is determined on the basis of affidavits alone, the plaintiffs eventually must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial. *Marine Midland Bank*, 664 F.2d at 904.

*Laboratories v. Axiom Medical, Inc.,* 600 F.Supp. 731 (E.D.N.Y.1985).

Toll asserts that personal jurisdiction cannot be maintained as to him personally because he was acting solely in his corporate capacity as AIA's chairman and chief executive officer. It is axiomatic that entry into the state by a nonresident corporate officer for corporate business purposes will justify jurisdiction only over the corporation. *Bastille Properties, Inc. v. Hometels of America, Inc.,* 476 F.Supp. 175, 176 (S.D.N.Y.1979) (citing *Merkel Associates, Inc. v. Bellofram Corp.,* 437 F.Supp. 612, 617 (W.D.N.Y.1977), and *Yardis Corp. v. Cirami,* 76 Misc.2d 793, 351 N.Y.S.2d 586 (Sup.Ct. Nassau Co.1974)). Yet Catsimatidis asserts in his affidavit that Toll entered into contract negotiations in New York in his individual, as well as corporate, capacity. This Court must treat Catsimatidis' assertions as true for present purposes. Accordingly, Toll is held to have been acting in an individual as well as a corporate capacity. Of course, plaintiffs ultimately bear the burden of proving that Toll was acting in an individual capacity by a preponderance of the evidence either at a pretrial evidentiary hearing or at trial. The basic issue then becomes whether Toll's New York contacts are transactions of business capable of supporting jurisdiction. That determination requires this Court to decide whether New York courts would find jurisdiction over nonresident defendant Toll under the New York long arm statute. *CutCo Industries,* at 363.

Plaintiffs claim that the several telephone calls which Toll placed to Catsimatidis in New York, the June 4 meeting in New York, and the Catsimatidis check drawn on a New York bank constitute transactions of business in New York sufficient to establish personal jurisdiction over Toll. Toll asserts that the New York meeting did not involve the contract sued upon in this action and cannot be used to support jurisdiction. Plaintiffs' papers and affidavits demonstrate that the June 4 meeting in New York was relevant to the contract which is being sued upon in this action, and this Court accepts it as true for the purposes of this decision. Plaintiffs will also bear the burden of proving this assertion at trial.

The New York Court of Appeals has held that a single transaction of business in New York, out of which the cause of action has arisen, may be sufficient for the assertion of long arm jurisdiction under CPLR § 302(a)(1). *Interface Biomedical Laboratories,* 600 F.Supp. at 735 (citing *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 15 N.Y.2d 443, 456, 209 N.E.2d 68, 75, 261 N.Y.S.2d 8, 18, *cert. denied,* 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965)). Any contract negotiations evidencing a purposeful invocation of the laws of the forum state are transactions of business for purposes of New York's long arm statute. *Liquid Carriers Corp. v. American Marine Co.,* 375 F.2d 951, 955–56 (2d Cir.1967). It does not matter whether the negotiations are preliminary, or whether the contract is executed in New York, or whether performance is contemplated for New York. *Moser v. Boatman,* 392 F.Supp. 270, 274 (E.D.N.Y.1975). Nor does it matter whether the transaction occurred over the telephone. *Parke-Bernet Galleries, Inc. v. Franklyn,* 26 N.Y.2d 13, 256 N.E.2d 506, 308 N.Y.S.2d 337 (1970). As a result, it appears that the application of New York's long arm statute does not necessarily depend upon the number of negotiating sessions or their proximity to the ultimate agreement; as long as the discussions "significantly advance the making of a corporate contract of importance," it appears that the parties transacted business within the state. *ECC Corp. v. Slater Electric, Inc.,* 336 F.Supp. 148, 152 (E.D.N.Y.1971).

Catsimatidis claims that Toll telephoned him several times in New York expressly to discuss the terms of what ultimately evolved into the agreement, that the New York meeting was the most important of the three successive negotiation sessions, that Toll personally agreed to guaranty his performance under the agreement at the New York meeting—which greatly influenced plaintiffs to enter into the

agreement—that Catsimatidis' checks were drawn on a New York bank, and that substantial performance was to occur in New York. In light of these assertions, I find that plaintiffs have sufficiently alleged a transaction of business in New York to withstand a motion to dismiss for lack of personal jurisdiction.

## Venue

Toll claims this suit should also be dismissed for improper venue. The controlling venue statute, 28 U.S.C. § 1391(a), provides that a diversity action such as this "may ... be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose." Venue here is premised on the latter basis because there is no federal judicial district in which either all plaintiffs or all defendants reside.

■ It should first be noted that the issue of where a claim arises for purposes of venue under Section 1391 is determined as a matter of federal, rather than state, law. *Moyglare Stud Farm v. Due Process Stable, Inc.*, 562 F.Supp. 289 (S.D.N.Y. 1983) (citing *Leroy v. Great Western United Corp.*, 443 U.S. 173, 183 n. 15, 99 S.Ct. 2710, 2716 n. 15, 61 L.Ed.2d 464 (1979)).

■ It has also been said that the phrase "in which the claim arose" is simpler in its statement than in its operation. *Ghazoul v. International Management Services, Inc.*, 398 F.Supp. 307, 314 (S.D.N.Y.1975) (citing 1 J. Moore, Moore's Federal Practice Para. 0.124[5.–2], at 1423–35 (2d ed. 1974)). Difficulty has arisen over the construction of this phrase because, as Professor Moore has suggested, the language lends "some inference that the draftsmen assumed that every claim arises in some *one* district." *Id.* In an often-quoted passage, the Supreme Court held, with respect to identical language in Section 1391(b):

> In our view, therefore, the broadest interpretation of the language of § 1391(b) that is even arguably acceptable is that in the unusual case in which it is not clear that the claim arose in any one specific district, a plaintiff may choose

between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim.

*Leroy v. Great Western United Corp.*, 443 U.S. at 185, 99 S.Ct. at 2717. (footnote and citations omitted). As a result, multidistrict venue appears permissible only where the claim has very substantial contacts with, or a close relationship to, each of the districts claimed as potentially appropriate. *Cheeseman v. Carey*, 485 F.Supp. 203, 212 (S.D.N.Y.1980).

■ District courts in New York generally use a "weight of contacts" approach in deciding where the claim arises for purposes of venue. *Canaday v. Koch*, 598 F.Supp. 1139, 1147 (E.D.N.Y.1984); *Ghazoul*, 398 F.Supp. at 315–16. Under the "weight of contacts" approach, the claim arises "in the district where the [defendant's] contacts had been most significant." *Honda Associates, Inc. v. Nozawa Trading, Inc.*, 374 F.Supp. 886, 891 (S.D.N.Y. 1974). Here, Catsimatidis claims several New York contacts, which previously were enumerated. Toll, on the other hand, argues that the agreement was wholly consummated in Pennsylvania. Toll's position is untenable. It is clear that the contacts between the claim and this district are not insignificant but go to the heart of plaintiffs' claims, the negotiation and performance of the agreement. Nor has it been established that the weight of contacts with the Eastern District of Pennsylvania so far exceeds that of events occurring here that plaintiff's choice of venue should be overridden. This case therefore appears to be one of those "unusual cases" discussed by the Supreme Court in *Leroy* "in which it is not clear that the claim arose in any one specific district." *Leroy*, 443 U.S. at 185, 99 S.Ct. at 2717. As a result, plaintiff's choice among those districts with approximately equal plausibility—here, the Southern District of New York—may prop-

erly be assigned as the locus of the claim. *Id.*

Accordingly, defendant's motion to dismiss for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure is denied.

SO ORDERED.