Lawrence H. **SCHUR** and Paul E. Schur, Plaintiffs,

v.

Stephen W. **PORTER**; Dunnells, Duvall Bennett & Porter; and Van Ness, Feldman, Sutcliffe & Curtis, Defendants.

No. 88 Civ. 3177 (MGC).

United States District Court, S.D. New York.

May 30, 1989.

Friedman, Wittenstein & Hochman, New York City, for plaintiffs; by Andrew A. Wittenstein, David J. Nathan, Eric F. Gebaide.

Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski by Haydn J. Brill, Thomas Martin, New York City, and Steptoe & Johnson, by Roger E. Warin, Antonia B. Ianniello, Christian M. McBurney, Washington, D.C., for defendants.

## OPINION AND ORDER

CEDARBAUM, District Judge.

Defendants Stephen W. Porter, Dunnells, Duvall, Bennett & Porter ("Dunnells") and Van Ness, Feldman, Sutcliffe & Curtis ("Van Ness") move to dismiss this diversity action for lack of personal jurisdiction and improper venue. In addition, defendants move to dismiss the legal malpractice claim on the ground that the claim is barred by the statute of limitations. For the reasons discussed below, defendants' motion is granted in part and denied in part.

### PARTIES

Plaintiff Lawrence H. Schur ("Lawrence") is a citizen of New York. Plaintiff Paul E. Schur ("Paul"), Lawrence's brother, is a citizen of Connecticut. Defendant Porter, who is a cousin of Lawrence and

Paul, is a citizen of Maryland. Defendant Dunnells is a partnership engaged in the practice of law in Washington, D.C. Defendant Van Ness is a professional corporation engaged in the practice of law in Washington, D.C.

### FACTUAL BACKGROUND

The following facts are either uncontested or appear from plaintiffs' papers in opposition to defendants' motion to dismiss. Since an evidentiary hearing has not been held, the factual assertions in plaintiffs' papers are accepted as true for purposes of this motion. *See Cutco Industries v. Naughton,* 806 F.2d 361, 363 (2d Cir.1986); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 56–57 (2d Cir.1985).

Lawrence, Paul, and their brother Joel Schur ("Joel") owned a joint interest in two New York textile manufacturing companies, Orbit Industries, Inc. and Rome Knitting Mills, Inc. ("Orbit" and "Rome"). In 1980, the Schur brothers retained Porter to represent all three in connection with their decision to "break up" their interest in Orbit and Rome because Lawrence's and Paul's relationship with Joel had become strained. Porter, who was then a partner at Dunnells, had represented Joel and the companies he controlled since at least the early 1970's.

In 1980, Porter had a lengthy meeting in New York with the Schurs regarding their joint interest in Orbit and Rome, and the properties owned by those companies. During the following two years, Porter prepared all the papers and provided legal advice in connection with the "breakup." During the course of Porter's representation, an issue arose as to the appropriate disposition of certain properties owned by Orbit and Rome. The Schurs decided to keep the property upon which Orbit's and Rome's operations were physically located, and "spin off" six other New York properties into a partnership to be called Trio Realty Company ("Trio"), which would be equally owned by the three brothers.

On June 7, 1982, Porter, who had joined Van Ness on May 1 of that year, mailed drafts of various agreements to the Schur brothers in New York. Among the draft agreements, were two contracts for the sale of real properties, one between Rome and Trio, the other between Orbit and Trio.

Thereafter, Porter represented the Schurs in connection with the preparation of the Trio partnership agreement. Porter had more than twenty telephone conversations regarding the agreement with Lawrence while the latter was in New York. In addition, Porter mailed drafts of legal documents, related correspondence, and invoices to Lawrence in New York. In July of 1982, the Trio agreement was signed in New York by the three brothers. Porter was not physically present, but he was on the telephone advising the brothers during the signing. The agreement provided that the principal office of the partnership would be located in the Bronx, New York, and that the "[a]greement and the rights of the Partners shall be governed by and construed in accordance with the laws of the State of New York."

Shortly after the Trio agreement was signed, Porter, who had since returned to Dunnells on October 1, 1982, suggested to the Schurs that they amend the partnership agreement of the Schur Realty Company, a New York limited partnership. The Schur Realty Company had been formed in 1955 for the purpose of owning and operating four pieces of New York real estate. The three brothers were the general partners, and the Jeffrey Tieman Irrevocable Trust, a trust for the benefit of Jeffrey Tieman, the retarded son of a deceased sister of the Schurs, was the limited partner. Lawrence and Porter were the trustees of the trust.

Porter represented the three Schur brothers as well as the trust in the drafting and preparation of the "Amended and Restated Partnership Agreement and Certificate of Schur Realty Company." The negotiation process for this agreement followed the same pattern as that for the Trio agreement. Porter mailed drafts of the Schur Realty agreement, related correspondence, and invoices for his legal services to Lawrence in New York. In addition, Lawrence participated in numerous telephone conversations with Porter while the former

was in New York. The agreement, which was signed in New York City on March 1, 1983, provided that the principal office of the partnership would be located in the Bronx, New York, and that the "[a]greement and the rights of the Partners shall be governed by and construed in accordance with the laws of the State of New York."

On July 18, 1984, Porter sent a letter to Lawrence in which he noted that the relationship between Paul and Joel had continued to deteriorate, and that "it is time to consider the relationships of the parties in the two partnership agreements involving your family's real estate holdings; those being the partnership agreements for Trio and Schur Realty." Porter indicated that he was considering the option provided to each partner to require the other partners to buy him out at current market values. He closed the letter by asking Lawrence to "consult with him about the best method for bringing about an agreed market value for all of the properties that the two partnerships own."

The next evidence of Porter's activity is a letter that he wrote to Lawrence Schur on May 13, 1985. In the letter, Porter indicated that he would consider the proposed changes to the two partnership agreements which he understood that Lawrence had suggested to Joel. However, Porter made clear that he would advise Joel to oppose any change of language which would eviscerate the right of each partner to demand that an updated market value be placed on the properties subject to the agreements, and the right of each partner then to liquidate his ownership interest at current market value.

During the next two years, it became increasingly clear that Lawrence's and Paul's interpretation of the two partnership agreements differed from the interpretation of Joel and Porter. As a result of the disagreement, Joel and Porter sued Lawrence, Paul and the Schur Management Co. in this court on March 26, 1987. *Stephen Joel Schur and Stephen W. Porter v. Lawrence H. Schur, Paul E. Schur and Schur Management Co.*, 87 Civ. 2033 (MGC) ("*Schur v. Schur*"). Porter brought the action in his capacity as Trustee of the S. Joel Schur Trust of 1971 and as trustee of the Jeffrey Tieman Irrevocable Trust.

Porter retained the New York office of Jones, Day, Reavis and Pogue to represent him in the case. During the course of the litigation, which is still pending, Porter came to New York on two occasions. On February 23, 1988, Porter attended the deposition of a non-party witness, and on March 16, 1988, he came to New York for his own deposition. In the Joint Pre–Trial Order, Porter and a legal assistant at Dunnells are listed as trial witnesses.

On May 6, 1988, Lawrence and Paul filed this action against Porter and his law firms. In their complaint, plaintiffs seek to recover on claims of breach of fiduciary duty and malpractice. Plaintiffs' claim that Porter breached his fiduciary duty is grounded on his appearance as a plaintiff in *Schur v. Schur*. Plaintiffs argue that by suing them, even in a representative capacity, and by his attempt to construe the Trio agreement and the Schur Realty agreement in a manner adverse to their best interests, Porter breached his fiduciary duty to them.

In support of the malpractice claim, plaintiffs allege that Porter failed to draft the Trio agreement and the Schur Realty agreement in accordance with their intent. They allege that Porter is now asserting an interpretation of the agreements which is contrary to his representations to them at the time the agreements were entered into, and that if Porter had drafted the agreements to reflect his present position, they would not have executed the agreements. Further, they allege that Porter failed adequately to advise them of the various interpretations which could be ascribed to the agreements, and that his failure to draft the agreements to avoid the likelihood of litigation over the termination rights of a partner fell below the standard of care that he owed them. Finally, plaintiff Lawrence asserts that Porter negligently failed to advise him of the consequences of giving up his status as the sole general partner of Schur Realty.

## DISCUSSION

### I. *Personal Jurisdiction*

Pursuant to Fed.R.Civ.P. 12(b)(2), defendants have moved to dismiss the complaint for lack of personal jurisdiction. "Personal jurisdiction over a defendant in a diversity action is determined by the law of the forum in which the court sits." *Cutco Industries v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986); *see also Arrowsmith v. United Press International*, 320 F.2d 219, 223 (2d Cir.1963) (en banc). Plaintiff bears the burden of establishing the court's personal jurisdiction over a defendant. *See Cutco Industries*, 806 F.2d at 365; *Alexander & Alexander, Inc. v. Donald F. Muldoon & Co.*, 685 F.Supp. 346, 351–52 (S.D.N.Y.1988). However, if the court does not hold an evidentiary hearing, but relies on pleadings and affidavits in deciding the motion, plaintiff need make only a *prima facie* showing that jurisdiction exists. *See Welinsky v. Resort of the World D.N.V.*, 839 F.2d 928, 930 (2d Cir.1988); *Cutco Industries*, 806 F.2d at 365; *Alexander & Alexander, Inc.*, 685 F.Supp. at 352. These documents are construed in the light most favorable to plaintiff, and all doubts are resolved in plaintiff's favor. *See Cutco Industries*, 806 F.2d at 365; *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985); *Alexander & Alexander, Inc.*, 685 F.Supp. at 352.

Plaintiffs contend that personal jurisdiction over the defendants is authorized by the New York long-arm statute; on the malpractice claim, by New York Civil Practice Law and Rules ("CPLR") §§ 302(a)(1) and 302(a)(3)(ii), and on the breach of fiduciary duty claim, by CPLR §§ 302(a)(1) and 302(a)(2).

### A. Personal Jurisdiction over Porter

#### 1. *The Malpractice Claim*

■ CPLR § 302(a)(1) provides:

**(a) Acts which are the basis of jurisdiction.** As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state....

Section 302(a)(1) has two prongs, either of which can form the basis for the exercise of personal jurisdiction over a nondomiciliary. *See Etra v. Matta*, 61 N.Y.2d 455, 463 N.E.2d 3, 4, 474 N.Y.S.2d 687, 688 (1984); *see also Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 763–64 (2d Cir. 1983). The second prong provides for personal jurisdiction when a nondomiciliary "contracts anywhere to supply goods or services in the state," provided that the cause of action arises out of the contractual relationship. *Etra*, 474 N.Y.S.2d at 688, 463 N.E.2d at 4; CPLR § 302 Supplementary Practice Commentaries. In this case, there is no question that the malpractice claim arose out of Porter's agreement to provide legal services to Lawrence and Paul. The issue is whether those services were supplied in New York within the meaning of section 302(a)(1).

In order to understand the type of activities which the second clause of section 302(a)(1) was intended to reach, it is helpful to examine the provision's legislative history. This clause was added to the statute in 1979 "to ease the plight of New York residents seeking to obtain jurisdiction over those outside its borders who may be deemed virtually or constructively to do business in this state." *Waldorf Associates, Inc. v. Neville*, 141 Misc.2d 150, 533 N.Y.S.2d 182, 185 (Sup.Ct.1988). Prior to the amendment, section 302(a)(1) had been construed to require actual presence by the defendant in the state. According to the Law Revision Commission, which sponsored the amendment, the addition of the second clause was to expand long-arm jurisdiction to reflect the Supreme Court's decisions in *McGee v. International Life Insurance*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed. 2d 223 (1957) and *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Recommendation of the Law Revision Commission to the 1979 Legislature, 1979 McKinney's Session Laws of New York, pp. 1450–1455. The Commission noted that in those cases, the Supreme Court had relaxed the limits im-

posed by the due process clause of the Fourteenth Amendment on the power of a state court to exercise personal jurisdiction over a nonresident defendant. In *McGee,* the Court upheld the exercise of personal jurisdiction over an Arizona Life insurance company that had done business by mail within the forum state. In *International Shoe,* the Court rejected the constitutional attack on the exercise of personal jurisdiction over an out-of-state shoe company on the basis of the contacts of defendant's salesmen with the forum state. The Commission described the jurisdictional theory of *International Shoe* as follows:

Chief Justice Stone held that certain kinds of contacts by the defendant with the forum state because of their nature, quality and circumstances of their commission, could be deemed sufficient to render the corporation liable to suit on causes of action arising from those contacts; that it is the nature of the defendant's contacts with the state that reveals the true justification for maintaining or not maintaining jurisdiction. The quality of those contacts must be such that no unfairness inures to defendant in forcing him to submit to the state's jurisdiction, and so that the federal system of values is maintained.

*Id.* at 1452–53.

The Commission proposed that New York's long-arm statute should "exploit the full potential" of these two Supreme Court cases. The Commission was particularly persuaded by the "basic thesis of *International Shoe* that the test of jurisdiction is reasonableness." The Commission advocated the exercise of personal jurisdiction over a person who "intentionally creates a contact with New York by contracting to do something having effects in New York" because it is "clearly reasonable that he be answerable in a New York court for his breach." The Commission concluded that "policy would be best served by extending New York long arm jurisdiction to these permissible limits so as to give plaintiffs injured in New York a convenient forum." *Id.* at 1453. To accomplish this goal, the Commission recommended that section 302(a)(1) be amended to add the clause "contracts anywhere to supply goods or services in the state." *Id.* at 1455. The Commission's proposal was adopted by the New York legislature.

By letters and telephone calls into New York, Porter represented the plaintiffs in the negotiation and drafting of the Trio and the Schur Realty partnership agreements. Both partnerships were formed in New York to own and operate New York properties, and were governed by New York law. Thus, Porter agreed to and did supply services in New York for a New York business transaction. It is fair and reasonable for Porter to have expected to defend these services in a New York court.

Accordingly, defendants' motion to dismiss the malpractice claim against Porter for lack of personal jurisdiction is denied.

### 2. *The Breach of Fiduciary Duty Claim*

■ Plaintiffs contend that personal jurisdiction over Porter is authorized on the breach of fiduciary duty claim by CPLR § 302(a)(2). That section provides:

(a) **Acts which are the basis of jurisdiction.** As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent:

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act....

Thus, plaintiff must make a *prima facie* showing that (1) Porter or his agent committed a tortious act, and (2) that the tortious act was committed while Porter or his agent was physically present in New York. *See, e.g., Roth v. El Al Israel Airlines,* 709 F.Supp. 487 (S.D.N.Y.1989); *Rolls–Royce Motors, Inc. v. Charles Schmitt & Co.,* 657 F.Supp. 1040, 1052–53 (S.D.N.Y.1987); *Business Trends Analysts v. Freedonia Group, Inc.,* 650 F.Supp. 1452, 1455–56 (S.D.N.Y.1987).

Plaintiffs claim that Porter breached his fiduciary duty when he sued them in *Schur v. Schur,* and when in his deposition testimony in *Schur v. Schur* he construed the

partnership agreements in a manner adverse to the best interests of plaintiffs.[1]

Breach of fiduciary duty is a tort. *See Mandelblatt v. Devon Stores, Inc.,* 132 A.D.2d 162, 521 N.Y.S.2d 672, 676 (1st Dep't 1987); *see also Restatement (Second) of Torts* § 874 comment b (1979) ("A fiduciary who commits a breach of his duty as a fiduciary is guilty of tortious conduct to the person for whom he should act."). A breach occurs when a fiduciary violates the standard of "fairness, good faith and loyalty" that all fiduciaries are bound by. *Newburger, Loeb & Co. v. Gross,* 563 F.2d 1057, 1078 (2d Cir.1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978). By alleging that Porter sued them on a matter in which he had represented them previously, and by alleging that Porter testified in a manner adverse to their best interests, plaintiffs have stated a claim for breach of fiduciary duty. Since these acts were committed by Porter or his agent in New York, plaintiffs have made a *prima facie* showing that § 302(a)(2) authorizes the exercise by a New York Court of personal jurisdiction over Porter. Therefore, dismissal of this claim against defendant Porter is denied.

### B. Personal Jurisdiction over Van Ness and Dunnells

#### 1. *The Malpractice Claim*

 Plaintiffs' malpractice claim is grounded on Porter's drafting of the Trio and Schur Realty agreements. Plaintiffs' claim against Van Ness is based on the fact that Porter was at Van Ness when he drafted the Trio agreement, and plaintiffs' claim against Dunnells is based on the fact that Porter was a partner of Dunnells when he drafted the Schur Realty agreement. Plaintiffs do not contend that either firm had any contact with New York in connection with the agreements other than Porter's activities. They assert that Porter was acting as an agent of Van Ness when he represented plaintiffs on the Trio agreement, and that Porter was acting as an agent of Dunnells when he represented plaintiffs on the Schur Realty agreement.

To be considered an agent for jurisdictional purposes, "the alleged agent must have acted in the state 'for the benefit of, and with the knowledge and consent of' the non-resident principal," and the principal must "exercise 'some control' over the agent." *Cutco Industries v. Naughton,* 806 F.2d 361, 366 (2d Cir.1986); *see also Kreutter v. McFadden Oil Corp.,* 71 N.Y. 2d 460, 522 N.E.2d 40, 43–44, 527 N.Y.S.2d 195, 199 (1988). Plaintiff has submitted sufficient evidence to make a *prima facie* showing that Porter acted for the benefit of and with the knowledge and consent of Van Ness and Dunnells. All correspondence between Porter and the plaintiffs was on the law firms' stationery. Both firms billed the plaintiffs for Porter's services. Furthermore, another partner of Dunnells worked on the Schur Realty agreement with Porter. Therefore, Porter's contacts with New York are attributable to the law firms, and this court has personal jurisdiction over the firms on the malpractice claim.

#### 2. *The Breach of Fiduciary Duty Claim*

 As has been discussed, plaintiffs' breach of fiduciary duty claim is based on Porter's filing of and testimony in the *Schur v. Schur* action. Porter was not acting as an agent of either law firm when he filed that action. He brought the suit and was deposed as a party solely as a trustee of the Jeffrey Tieman Trust. He was no longer affiliated with Van Ness at the time, so his acts are clearly not attributable to that firm. Even though Porter was a partner of Dunnells at the time, his acts as a trustee as distinguished from his acts as a lawyer cannot be imputed to Dunnells. Plaintiffs have not offered any facts that show that Porter was acting as an agent of Dunnells in his capacity as a trustee of the Tieman Trust. Therefore, this claim is dismissed as against Van Ness and Dunnells.

---

1. By Stipulation and Order dated February 8, 1989, Porter was dismissed as a plaintiff in *Schur v. Schur.* This development is of no moment because plaintiffs' claim is based on the institution of the action by Porter and on the testimony he gave at his deposition.

## II. Venue

■] Defendants have also moved to dismiss the complaint for improper venue pursuant to Fed.R.Civ.P. 12(b)(3). 28 U.S.C. § 1391(a) provides that in a diversity action, venue is proper "only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose." Since Paul resides in Connecticut and Porter resides in Maryland, venue is only proper in New York if the claim arose here.

Plaintiffs' breach of fiduciary duty claim is based on Porter's filing of the *Schur v. Schur* action in this court, and on the testimony Porter gave at his deposition in New York. Thus, the claim clearly arose in this district, and defendants' motion to dismiss this claim for improper venue is denied.

In determining where plaintiffs' malpractice claim arose, I apply the "weight of contacts" approach which has been followed by the courts in this district. *See e.g., Catsimatidis v. Innovative Travel Group, Inc.,* 650 F.Supp. 748, 752 (S.D.N.Y.1986); *National Union Fire Insurance Co. of Pittsburgh, Pa. v. Mid–Continent Systems, Inc.,* No. 85–5262, 1986 WL 7544 (S.D.N.Y. June 30, 1986) (Lexis); *Irving Capital Corporation v. Serologicals Acquisition, Inc.,* No. 85–6383, 1986 WL 2763 (S.D.N.Y. Feb. 27, 1986) (Lexis). Under this approach, a claim arises in the district in which the defendant's contacts are the most significant.

As discussed above, New York has substantial contacts with the claim. Although Porter drafted the agreements and provided legal advice from his office in Washington, D.C., his contacts with Washington do not outweigh the contacts of all the parties and the effect of Porter's services in New York. Furthermore, plaintiffs chose New York as the venue for this action, and plaintiffs' choice of venue should not be overridden absent a showing that another district has substantially more contacts with the claim. *See Id.* (plaintiff's choice among those districts "with approximately equal plausibility ... may be assigned as the locus of the claim."); *Catsimatidis,* 650 F.Supp. at 752–53. Therefore, defendants'

motion to dismiss this claim for improper venue is denied.

## III. Statute of Limitations

■] Defendants have also moved to dismiss the legal malpractice claim pursuant to Fed.R.Civ.P. 12(b)(6) on the ground that the claim is barred by the statute of limitations. Defendants argue that the applicable statute of limitations is CPLR § 214(6), which provides that actions to recover damages for malpractice must be commenced within three years. However, the New York Court of Appeals has held that claims for professional malpractice which have their "genesis in the contractual relationship of the parties" and which seek recovery for damages to property or pecuniary interests (as distinguished from claims for personal injuries) are governed by New York's six year statute of limitations for contract actions prescribed by CPLR § 213(2), regardless of the theory of liability pleaded in the complaint. *Video Corp. of America v. Frederick Flatto Associates,* 58 N.Y.2d 1026, 448 N.E.2d 1350, 462 N.Y. S.2d 439 (1983); *Sears, Roebuck & Co. v. Enco Associates, Inc.,* 43 N.Y.2d 389, 372 N.E.2d 555, 558, 401 N.Y.S.2d 767, 771 (1977).

In the proceedings below in *Video Corp.,* the Appellate Division had expressly drawn attention to the reality that professional malpractice actions normally arise out of a contractual relationship and involve injury to property or pecuniary interests only. *Video Corp. of America v. Frederick Flatto Associates,* 85 A.D.2d 448, 448 N.Y.S.2d 498, 501 (1982). To imply an agreement to exercise due care in every professional relationship in practical effect restricts CPLR § 214(6) to malpractice actions against architects for personal injuries caused by the collapse of structures. *Id.* Nevertheless, the Court of Appeals rejected the position of the Appellate Division, and adopted the dissenting opinion of Justice Sandler which applied the six year limitation period prescribed by CPLR § 213(2) for contract actions. *Video Corp.,* 462 N.Y.S.2d at 439. Indeed, in *Video Corp.,* the Court of Appeals specifically disapproved its earlier decision in *Gilbert Properties, Inc. v. Mill-*

*stein,* 33 N.Y.2d 857, 307 N.E.2d 257, 352 N.Y.S.2d 198 (1973), which had applied the three year statute of limitations to bar a suit against a lawyer for malpractice. *Id.*

Thus, under the law of New York, the six year contract statute of limitations, and not the three year malpractice statute, governs the claim of legal malpractice. *See, e.g., Cohen v. Goodfriend,* 665 F.Supp. 152 (E.D.N.Y.1987); *Bloom v. Kernan,* 536 N.Y.S.2d 897 (3d Dep't 1989); *Sinopoli v. Cocozza,* 105 A.D.2d 743, 481 N.Y.S.2d 177 (2d Dep't 1984); *cf. Allied International Bancorp, Inc. v. Peat, Marwick, Mitchell & Co.,* 140 Misc.2d 78, 530 N.Y.S.2d 964 (Sup.Ct.1988). *But see Winkler v. Messinger, Alperin & Hufjay,* 538 N.Y.S.2d 299 (2d Dep't 1989) (court applied CPLR § 214(6) without any reference to *Video Corp.* or *Sears, Roebuck*); *Bucaro v. Keegan, Keegan, Hecker & Tully, P.C.,* 126 Misc.2d 590, 483 N.Y.S.2d 564 (Sup.Ct.1984) (same). Since, as defendants concede, the legal malpractice claim accrued within this period, defendants' motion is denied.

### CONCLUSION

For the reasons discussed above, defendants' motion to dismiss the complaint for lack of personal jurisdiction is denied as to defendant Porter on the malpractice and breach of fiduciary duty claims, and as to defendants Van Ness and Dunnells on the malpractice claim. The motion is granted as to defendants Van Ness and Dunnells on the breach of fiduciary duty claim. Defendants' motion to dismiss the complaint for improper venue is denied. Defendants' motion to dismiss the malpractice claim on the ground that it is barred by the statute of limitations is denied.

SO ORDERED.