**William H. SALTZMAN, Plaintiff,**

v.

**LOUISIANA AUCTION EXCHANGE, INC., Ronald L. Causey and Sandra McElwee Causey, Defendants.**

No. 97·Civ. 0321(PKL).

United States District Court, S.D. New York.

March 20, 1998.

Leader & Berkon (Frederick D. Berkon, of counsel), New York City, for Plaintiff.

Ronald Causey & Associates (Ronald L. Causey, of counsel), Baton Rouge, LA, for Defendants.

## OPINION AND ORDER

LEISURE, District Judge.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, plaintiff moves for summary judgment. Plaintiff also seeks interest on any monies owed to him, pursuant to New York Civil Practice Law and Rules ("CPLR") § 5001, and attorneys' fees and costs chargeable to this litigation, pursuant to Fed. R.Civ.P. 54. Defendants Louisiana Auction Exchange, Inc. ("LAE"), Ronald Causey, and Sandra McElwee Causey move pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(3) to dismiss the claims against them asserting that the Court lacks jurisdiction over them and that the Southern District of New York is an improper venue under Title 28, United States Code ("U.S.C."), Section 1391. For the reasons stated below, plaintiff's motions are granted in part and denied in part, and defendants' motions are denied.

## BACKGROUND

In July, 1994, plaintiff, a resident of New Rochelle, New York, viewed an advertisement in "Art and Antiques Weekly" for an auction to be conducted by LAE. Plaintiff then requested by telephone a catalogue for the auction, which LAE mailed to his home in New York. Plaintiff submitted a bid on a painting, which LAE accepted. LAE delivered the painting to plaintiff without any difficulties. After this transaction, plaintiff was placed on the LAE mailing list, and he received notices, brochures, catalogues, and other literature concerning LAE auctions over the next several months.

On or about March 1, 1995, plaintiff received a catalogue depicting approximately one-hundred forty-one works of art scheduled to be auctioned by defendants on March 18, 1995, in Baton Rouge, Louisiana. Based on the descriptions in the brochure, Saltzman submitted by facsimile transmission maximum bids for certain pieces of art. On or about March 22, 1995, plaintiff received facsimile notification at his home that LAE

accepted his bid for eleven pieces of art, consisting of nine paintings and two sculptures. The invoice listed total purchases of $50,650.00 and a buyer's premium of $5,065.00, for a total price of $55,715.00. Of this total, the invoice attributed $52,855.00 to the paintings, breaking down to a $48,050.00 purchase price and a buyer's premium of $4,805.00.

After consultations with experts, plaintiff determined that the paintings were forgeries. He attempted to return the paintings to defendants in exchange for a refund of the $52,855.00 paid for the paintings. After defendants refused this proposal, plaintiff retained the services of counsel to handle the issue. The parties attempted to resolve the dispute by having an appraiser issue a binding ruling on the value of the paintings, but were unable to agree on an appraiser.

Following indications that plaintiff was about to commence legal proceedings, defendants contacted plaintiff's counsel in an effort to settle the dispute. Defendants proposed that in exchange for plaintiff's return of the paintings, defendants would have a period of time in which to attempt to resell the art, but after that period, plaintiff would receive the entire $52,855.00, regardless of defendants' success in reselling the paintings.

On March 11, 1996, the parties executed the settlement in the form of a letter agreement, signed by plaintiff's counsel on behalf of plaintiff and by Ronald Causey, an attorney admitted to practice law in Louisiana, on behalf of himself, his wife Sandra McElwee Causey, and LAE. The letter agreement contained the following terms: (1) in exchange for Saltzman not commencing a lawsuit immediately, the expiration dates of any applicable statutes of limitations would be extended one full year beyond the original expiration dates; (2) Saltzman would return to LAE the paintings purchased at the March 18, 1995, auction; (3) LAE would attempt to sell the paintings within the next eight months; (4) LAE immediately would forward to Saltzman the proceeds of any sale up to the price Saltzman paid; (5) after no later than eight months from the date of the letter agreement, LAE would refund Saltzman in total for the paintings, regardless of whether LAE had resold the paintings; and (6) the parties would exchange appropriate releases upon full payment to Saltzman. The parties also agreed that if LAE failed to make full payment to Saltzman, plaintiff was free to assert any claims against defendants.

Following the execution of the letter agreement, Saltzman returned the paintings to LAE and refrained from commencing any legal action. On November 11, 1996, the eight-month period ended and defendants' obligation to make full payment of $52,855.00 matured. Defendants did not remit any payment to plaintiff, and Saltzman commenced this action. Plaintiff served all defendants and the defendants failed to answer the Complaint. However, on March 27, 1997, defendants filed a motion to dismiss for improper venue.[1] Ronald Causey filed the motion on behalf of all defendants, although he was not admitted to practice before this Court. The Court scheduled a pre-trial conference for April 18, 1997, at which the defendants were not represented. The Court instructed plaintiff that several options were available to him under the Federal Rules of Civil Procedure, and that he could proceed in the manner he felt was most appropriate. On May 6, 1997, this Court granted Ronald Causey's motion to be admitted *pro hac vice*. Plaintiff then filed a motion for summary judgment, as well as his opposition to defendants' motion to dismiss. Defendants filed additional documents in support of their motion to dismiss, but filed no opposition to plaintiff's motion for summary judgment.

## DISCUSSION

### I. JURISDICTION

 Plaintiff brought this action pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332. "[P]ersonal jurisdiction over a defendant in a diversity action is determined by reference to the law of the jurisdiction in which the court sits." *Hoffritz for*

---

1. Although defendants' motion is based on improper venue, the memorandum of law in support of the motion challenges the Court's *in personam* jurisdiction over the defendants. Therefore, the Court will address both issues.

*Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55 (2d Cir.1985). Accordingly, the Court refers to the law of New York to determine whether the Court has personal jurisdiction over defendants.

Both LAE and the Causeys are subject to the jurisdiction of New York based on New York's long-arm statute, CPLR 302. Specifically, CPLR 302(a)(1) provides:

(a) **Acts which are the basis of jurisdiction.** As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; ....

N.Y. CPLR 302 (McKinney's 1990).

## A. *LAE*

■ LAE solicited business in New York through its catalogues and advertisements. Saltzman originally learned of LAE through an advertisement in a national magazine, "Art and Antiques Weekly," and at his New York home received, unsolicited, LAE's catalogue for the auction of March 18, 1995. LAE also shipped goods into New York; in this case LAE delivered paintings and sculptures to Saltzman's home. It is indisputable that a single transaction may satisfy the "transacting business" requirement of CPLR 302(a)(1). *See Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 15 N.Y.2d 443, 456, 261 N.Y.S.2d 8, 209 N.E.2d 68, 75 (1965). Therefore, the dispute between the parties arose from a transaction of business in New York. The parties then signed the letter agreement in an effort to settle their differences. Accordingly, any dispute concerning the letter agreement necessarily arises from a transaction of business in New York.

LAE's activities in New York also satisfy the requirements of due process. The conduct of LAE demonstrates that it "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws...." *Hanson v. Denckla,* 357 U.S.

235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). LAE's actions and connection with New York "are such that [it] should reasonably anticipate being haled into court [here]." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Therefore, the exercise of jurisdiction over LAE in this case will not offend "our traditional conception of fair play and substantial justice." *International Shoe v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

## B. *Ronald Causey and Sandra McElwee Causey*

■ By entering into the letter agreement with Saltzman in their individual capacities, the Causeys have transacted business in New York for purposes of the long-arm statute. The Causeys initiated the settlement discussions and entered into an agreement that required them to refund Saltzman's monies to him in New York. "Any contract negotiations evidencing a purposeful invocation of the laws of the forum state are transactions of business for purposes of New York's long-arm statute." *Catsimatidis v. Innovative Travel Group, Inc.,* 650 F.Supp. 748, 751 (S.D.N.Y.1986) (citing *Liquid Carriers Corp. v. American Marine Corp.,* 375 F.2d 951, 955–56 (2d Cir.1967)). A settlement agreement, like the letter agreement, is a contract. *See Janneh v. GAF Corp.,* 887 F.2d 432, 436 (2d Cir.1989). By initiating the settlement discussions on behalf of all defendants, Ronald Causey purposefully availed all defendants of New York and its laws.

Although the negotiations that led to the letter agreement occurred through the use of telephones, letters, and facsimiles, these factors do not prevent the application of New York's long-arm statute. *See Catsimatidis,* 650 F.Supp. at 751; *see also Rutgerswerke Ag, S.p.A. v. Abex Corp.,* No 93 Civ. 2914, 1995 WL 625701 (S.D.N.Y. Oct.25, 1995) (Keenan, J.); *Parke–Bernet Galleries, Inc. v. Franklyn,* 26 N.Y.2d 13, 17, 308 N.Y.S.2d 337, 256 N.E.2d 506, 508 (1970). As long as the discussions or negotiations advance the formation of a contract, the parties transacted business within New York. *See Catsimatidis,* 650 F.Supp. at 751. Accordingly, the Causeys are subject to the jurisdiction of this Court.

Additionally, the Causeys, in their personal capacities, acted in the letter agreement as guarantors for the debts of LAE. Although the New York Court of Appeals has not addressed the jurisdictional significance of a payment guaranty under CPLR 302(a)(1), "[a] majority of lower New York courts have concluded that a non-domiciliary's guaranty is a contract to supply services in New York that supports the assertion of personal jurisdiction." *A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 80 (2d Cir.1993). As any payments under the letter agreement would go to plaintiff, who resides in New York, the Causeys contracted to perform financial services in New York. The Court therefore may exercise jurisdiction over the Causeys pursuant to CPLR 302(a)(1).

## II. VENUE

■ Title 28, U.S.C. § 1391 provides, in relevant part: "A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in ... (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, ...." Although a number of the events that led to this action, such as the auction, occurred in Louisiana, there is no question that this Court is a proper venue. LAE mailed an unsolicited catalogue concerning the auction of March 18, 1995, to Saltzman at his home in New Rochelle, New York. LAE then shipped the paintings in dispute to plaintiff's home. Plaintiff's counsel negotiated with defendants from New York City, and payment under the terms of the letter agreement was due to plaintiff in New York. As both New Rochelle and New York City are in the Southern District of New York, this Court finds that a substantial part of the events that give rise to plaintiff's action occurred in this District, making this a proper venue for the case at bar.

## III. SUMMARY JUDGMENT

### A. *Legal Standard*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, it is this Court's responsibility "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir.1986). Nonetheless, summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Id.* at 325 (internal citations omitted). "The burden on the moving party may be discharged by showing ... that there is an absence of evidence to support the non-moving party's case." *Id.* (internal citations omitted). The burden of demonstrating the existence of a genuine issue of material fact then shifts to the non-moving party. *See id.* at 322–23. The non-moving party may not rely solely on its pleadings nor on conclusory factual allegations in satisfying this burden. *See Gray v. Darien*, 927 F.2d 69, 74 (2d Cir.1991). The non-moving party instead must offer specific evidence supporting its claim that there exists a genuine issue of material fact. *See Celotex*, 477 U.S. at 324. In demonstrating that the factual issue in dispute is "genuine", the non-moving party must offer evidence to allow a reasonable jury to return a verdict in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ Plaintiff moves for summary judgment for breach of contract, based on the

failure of defendants to comply with the terms of the letter agreement. Summary judgment is appropriate in a breach of contract action "where the agreement's language is unambiguous and conveys a definite meaning." *John Hancock Mutual Life Ins. Co. v. Amerford International Corp.,* 22 F.3d 458, 461 (2d Cir.1994). Summary judgment normally is inappropriate when a contract term is ambiguous, because a triable issue of fact exists as to the interpretation of the term. *See Rothenberg v. Lincoln Farm Camp, Inc.,* 755 F.2d 1017, 1019 (2d Cir.1985) (Kearse, J.). Likewise, "Where the language of the contract is unambiguous, and reasonable persons could not differ as to its meaning, the question of interpretation is one of law to be answered by the court." *Id.*

### B. *Breach of the Letter Agreement*

■ Defendants raise no opposition to plaintiff's motion for summary judgment for breach of the letter agreement. The letter agreement clearly defines the obligations of each party to settle their dispute concerning the paintings. Plaintiff returned the paintings to LAE and refrained from commencing any legal action for an eight-month period, but received no refund from defendants. Plaintiff unquestionably fulfilled his obligation under the letter agreement, while defendants failed to perform as required. Plaintiff therefore is entitled to summary judgment against defendants for breach of the letter agreement.

### IV. INTEREST, COSTS, AND ATTORNEY'S FEES

■ Plaintiff also seeks interest on the monies owed from the date of breach, plus attorney's fees and costs associated with this action. New York law provides that "interest shall be recovered upon a sum awarded because of a breach of performance of a contract...." N.Y. CPLR 5001(a) (McKinney's 1992). Furthermore, "interest shall be computed from the earliest ascertainable date the cause of action existed...." N.Y.

CPLR 5001(b) (McKinney's 1992); *see also Conway v. Icahn & Co.,* 16 F.3d 504, 512 (2d Cir.1994). The letter agreement required defendants to refund plaintiff for the disputed paintings by November 11, 1996. Saltzman therefore is entitled to the interest accrued from November 11, 1996, on the $52,855.00 owed to him under the letter agreement.

■ In *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), the United States Supreme Court emphasized that the assessment of attorney's fees is within the inherent power of the Court. *See also Hutto v. Finney,* 437 U.S. 678, 689 n. 14, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). However, the Court does not believe that the conduct of defendants in this case, including the filing of their motion, warrants sanctions. While defendants' claims concerning the jurisdiction of this Court and the proper venue for this action do not prevail, the Court does not classify the defendants' motion as frivolous. Accordingly, plaintiff's request for attorney's fees is denied.[2]

Plaintiff's request for costs is misplaced in the context of his motion for summary judgment. Local Civil Rule 54.1 of this District governs taxable costs and the procedures a party must follow in order to obtain relief. The Court therefore denies plaintiff's motion, but plaintiff may resubmit his request to tax costs in accordance with Local Rule 54.1.

### CONCLUSION

For the reasons stated above, plaintiff's motions for summary judgment and prejudgment interest are HEREBY GRANTED, plaintiff's motions for attorney's fees and costs are HEREBY DENIED, and defendants' motions claiming that this Court lacks personal jurisdiction over them and that this Court is not a proper venue are HEREBY DENIED.

**SO ORDERED.**

---

2. In *Chambers,* the Supreme Court indicated that a party must receive an appropriate hearing before a court may impose sanctions such as attorney's fees upon a party. *See* 501 U.S. at 57.

Since the Court determines that the conduct of defendants does not warrant sanctions, a hearing is unnecessary.